IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **NORRIS ARMSTRONG, et al.,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 03-0148-WS-C |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 03-0635-WS-C |
| | ) | |
| **NORRIS ARMSTRONG, et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

**ORDER**

    This matter is before the Court on a motion in limine filed by the Block defendants ("Block") to exclude evidence concerning the expectations of plaintiff Norris Armstrong concerning the duration of the franchise agreements. (Doc. 235). The parties have submitted briefs in support of their respective positions, (Docs. 236, 246, 254), and the motion is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion is due to be granted in part and denied in part.

**BACKGROUND**

    The parties herein operated under franchise agreements providing that "[t]he term of this Agreement shall run for a period of five years from the date hereof, with further provisions [sic] that it shall be automatically renewed for successive periods of five years each, unless mutually terminated or

terminated pursuant to paragraph 12." (Doc. 236, Exhibit 1 at 11, ¶ 18). In 2002, the Missouri Court of Appeals ruled that this language did not create perpetual contracts but contracts with fixed five-year terms renewable only upon the parties' mutual consent, failing which the agreements expire at the end of the five-year term. *Armstrong Business Services, Inc. v. H&R Block*, 96 S.W.3d 867 (Mo. App. 2002). Block thereafter gave the plaintiffs notice that it would not renew the franchise agreements when their then-current five year terms expired in 2003.

The franchise agreements also provide that, in the event of termination for any reason other than sale to Block, "Block shall pay a fair and equitable price to Franchisee for Franchisee's business operated hereunder," subject to certain minima. (Doc. 236, Exhibit 1 at 12-13, ¶ 24). Under Count Nine of their third amended complaint, the plaintiffs claim that Block has breached the agreements by failing to pay the full fair and equitable price. (Doc. 162 at 27).

On motion for summary judgment, Judge Butler eliminated the plaintiffs' claims for fraud, including those based on alleged representations and/or suppressions concerning the duration of the franchise agreements under paragraph 18. (Doc. 230 at 4-9). Block expects the plaintiffs nevertheless to offer evidence that Armstrong, based on the language of paragraph 18 (prior to its interpretation by the Missouri appellate court) and statements by Block, understood that the agreements were perpetual and that he was entitled to retain the franchises until his retirement. The plaintiffs acknowledge that this is precisely their intention and insist they are entitled to do so because, "to properly determine ABS's fair and equitable value, the jury must consider factors such as the expectations of the parties which can be gleaned both from the Agreement itself and the representations made by Block." (Doc. 246 at 2). They also argue that the evidence is admissible to support their claims for breach of the implied covenant of good faith and fair dealing and for equitable estoppel. Block argues that all such evidence should be excluded pursuant to Federal Rules of Evidence 401, 402 and 403. (Doc. 236 at 3).[1]

---

[1] Block asks the Court to prohibit: (1) testimony by plaintiff Armstrong as to his expectations or their bases; (2) testimony by the plaintiffs' experts or others concerning the same; (3) statements by witnesses or counsel drawing the jury's attention to paragraph 18 or 25 (entitled, "Heirs, Successors and Assigns"); (4) any suggestion that the Missouri court's ruling was wrong or unfair; and (5) "any other evidence of (or supposedly justifying) Norris Armstrong's subjective belief that he had a right to

## DISCUSSION

### A.  Breach of Contract.

Block correctly notes that the plaintiffs cannot introduce evidence of Armstrong's expectations as to the duration of the franchise agreements unless that evidence is relevant to the determination of a fair and equitable price.  Whether such evidence is relevant for that purpose depends, in turn, on the scope of the term "fair and equitable price."  Block argues that the term, whether viewed in isolation, as part of paragraph 24, or as part of the entirety of each franchise agreement, unambiguously excludes from consideration the parties' expectations as to the duration of their agreements.  Block views the phrase as requiring an "objective purchase price" and precluding consideration of "the fairness of the parties' conduct toward each other."  (Doc. 236 at 10; Doc. 254 at 9-10 ).[2]

The threshold determination is whether the agreements are ambiguous in this respect.  If they are ambiguous, the resolution of the ambiguity is a question of fact, and evidence extrinsic to the agreements can be considered.  If they are unambiguous, that determination is for the Court to make, without considering extrinsic evidence.  *E.g., Thomas v. B.K.S. Development Corp.*, 77 S.W.3d 53, 59 (Mo. App. 2002).  "Whether a contract is ambiguous is a question of law. ...  In determining whether a contract is ambiguous, the court must consider the whole instrument and the natural and ordinary meaning of the language. ...  The mere fact that the parties disagree on the subject does not render the document itself ambiguous. ...  The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person." *Id*. (citations omitted); *accord Armstrong Business Services v. H&R Block*, 96 S.W.3d at 874.  In determining the ordinary

---

be an H&R BLOCK franchisee until he chose to retire."  (Doc. 236 at 2, 4-5, 6, 12).

[2]The plaintiffs complain that Block's position "disregards its prior arguments" concerning the clarity of the term, "fair and equitable price."  (Doc. 246 at 7).  The Court finds no inconsistency between the cited passages and Block's argument herein; a term can be ambiguous in some respects and unambiguous in others.  For example, the term "executive officer" may be ambiguous as to whether it includes a waste water treatment plant chief operator, *Martin v. United States Fidelity & Guaranty Co.*, 996 S.W.2d 506, 507-10 (Mo. 1999)(en banc), but it is not ambiguous as to whether it includes a janitor.

meaning of a term, the Court may consult standard English language dictionaries and legal authorities, including cases from other jurisdictions. *Martin v. United States Fidelity & Guaranty Co.*, 996 S.W.2d 506, 508-09 (Mo. 1999)(en banc).[3]

The term "fair price" has been employed in numerous Missouri judicial decisions and in many different contexts, yet the Court has detected no hint that the term encompasses anything other than economic considerations.[4] On the contrary, the Supreme Court has approved of jury charges defining "market value," in part, in terms of "fair price." *Metropolitan State Railway Co. v. Walsh*, 94 S.W. 860 (Mo. 1906), and cases cited therein. Courts in other jurisdictions have expressly linked "fair price" to economic considerations,[5] and the absence of more such pronouncements appears to reflect only that the connotation is so well understood that it need not be stated. A term that is limited to economic considerations cannot encompass equitable considerations such as the fairness of the parties' conduct.

Because the term "fair price" unambiguously excludes equitable considerations, the inquiry becomes whether injection of the clause "and equitable" meaningfully changes the equation. The courts of Missouri have encountered this term less often, but what precedent exists favors Block. In *State ex rel. City of Springfield v. Springfield Water Co.*, 131 S.W.2d 525 (Mo. 1939)(en banc), the parties entered an agreement whereby the city granted the water company the right and privilege of supplying water to the city. Their agreement provided the city the periodic right to purchase the water works "at

---

[3] The franchise agreements are to be construed under Missouri law. (Doc. 236, Exhibit 1 at 12, ¶ 22). The application of this provision has been judicially upheld, *Armstrong Business Systems v. H&R Block*, 96 S.W.2d at 871-73.

[4] *See, e.g., Estate of Mings v. Mings*, 6 S.W.3d 909, 914 (Mo. App. 1999)(sale of realty to son); *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 917 (Mo. App. 1991)(purchase of corporate assets); *Delahoussaye v. Newhard*, 785 S.W.2d 609, 613 (Mo. App. 1990)(redemption of stock of closed corporation); *In re: Marriage of Usrey*, 781 S.W.2d 556, 558 (Mo. App. 1989) (brokerage agreement regarding listing price); *McGuire Furniture Rental Co. v. Merta*, 773 S.W.2d 878, 882 (Mo. App. 1989)(sale of furniture).

[5] *See Cinerama, Inc. v. Technicolor, Inc*., 663 A.2d 1134, 1143 (Del. Ch. 1994); *Department of Highways v. Wall*, 32 So. 2d 718, 719 (La. App. 1947); *Houston Lighting & Power Co. v. Daily*, 291 S.W. 317, 319 (Tex. Civ. App. 1927).

their fair and equitable value." *Id.* at 528.  The Missouri Supreme Court, in dicta, equated this phrase with "fair and reasonable market value." *Id*. at 533.  In other jurisdictions as well, both courts and parties have likewise treated "fair and equitable price" as an economic measure, not an equitable one.[6]

That a "fair and equitable price" does not encompass equitable considerations is bolstered by the structure of paragraph 24 and the plaintiffs' own briefing.  Six times the transaction envisioned by paragraph 24 is described as a "purchase," a bloodless term connoting an exchange prompted by economic considerations of the item's value; no term that might implicate a judgment on the parties' conduct (such as "penalty") is employed.  Moreover, the plaintiffs utilize "fair and equitable *value*" to describe the payment required by paragraph 24,[7] reflecting their recognition that paragraph 24 is designed to value a business, not to right wrongs.

The Court concludes that the "fair and equitable price" to which paragraph 24 entitles the plaintiffs unambiguously excludes consideration of the fairness of the parties' conduct towards each other.  Thus, evidence of Armstrong's expectations and their sources cannot be admitted to prove the unfairness of Block's conduct in terminating the franchise agreements.

The plaintiffs do not appear to seriously argue otherwise.[8]  Instead, they argue that the meaning of "fair and equitable price," although unambiguously excluding considerations of fairness, is ambiguous concerning the time as to which valuation is to be pegged. (Doc. 204 at 7-8).  While Block argues the

---

[6]*See, e.g., Better Beverages, Inc. v. United States*, 619 F.2d 424, 430 (5th Cir. 1980); *United States v. Walton*, 2005 WL 1799235 at *5 (D. Kan. 2005); *Kirsch v. Commissioner*, 1985 WL 14746 (T.C. 1985); *Efros v. Nationwide Corp*., 98 F.R.D. 703, 704-05 (S.D. Ohio 1983); *Pogostin v. Pato Consolidated Gold Dredging, Ltd.*, 1981 WL 1613 at *2 (S.D.N.Y. 1981); *Fox v. Mountain West Electric, Inc*., 52 P.3d 848, 853 (Id. 2002); *Industry Mortgage Co. v. Smith*, 17 P.3d 851, 856 (Hi. App. 2001); *People ex rel. Vacco v. Chazy Hardware, Inc*., 675 N.Y.S.2d 770, 774 (N.Y. Sup. Ct. 1998); *Walker v. Walker*, 925 P.2d 1305, 1306 (Wyo. 1996); *Hubble v. Lone Star Contracting Corp*., 883 S.W.2d 379, 381 (Tex. App. 1994); *Tahoe Corp. v. P&G Gathering Systems, Inc*., 506 So. 2d 1336, 1343 (La. App. 1987).

[7](Doc. 246 at 1, 2, 4, 9).

[8]The plaintiffs suggest that Judge Butler has spoken favorably as to the admissibility of evidence of Armstrong's expectations. (Doc. 204 at 6; Doc. 246 at 3 (citing Doc. 230 at 3, 8; Civil Action 03-0635-WS-C, Doc. 34 at 14 n.10).  He has not, as even a perfunctory review of his orders reveals.

businesses should be valued as of the date of actual termination of the agreements, the plaintiffs argue they should be valued as of the date of expected termination (in this case, Armstrong's retirement). If the franchise agreements are ambiguous as to the proper valuation date, the parties may introduce extrinsic evidence of intent in an effort to resolve the ambiguity. The plaintiffs identify their extrinsic evidence as "Block's representations and conduct and Armstrong's expectations and reliance." (Doc. 204 at 8).

Block does not directly address the plaintiffs' theory of ambiguity but insists generally that both "fair and equitable price" and paragraph 24 unambiguously require "an objective determination of the appropriate purchase price," which Block juxtaposes against "either party's subjective expectations." (Doc. 236 at 9). The purported distinction between "objective" and "subjective" appears somewhat contrived,[9] but in any event Block has done nothing to suggest that the time of valuation of a business is not a necessary and objective component of the valuation process, such that ambiguity as to the intended time of valuation may be resolved by resort to extrinsic evidence.

Block also suggests that "fair and equitable price" unambiguously means "fair market value." (Doc. 218 at 8; Doc. 254 at 6 n.2; *id*. at 10). Even if this were so, it would not meet the plaintiffs' argument that the term is ambiguous as to the time of valuation. In any event, the Court concludes that "fair and equitable price" does not unambiguously mean "fair market value." The latter term is one of the most recognizable of all property concepts, while neither this Court nor the three valuation experts identified by the parties has any familiarity or experience with the former,[10] and research reveals an overwhelming preference for the latter.[11] Block has offered no explanation why it, or any contracting party intending to measure property at fair market value, would reject that exceedingly common and

---

[9]An expert's valuation of a property may include subjective elements, while a party's expectations — especially if shared by the opposing party — may be objectively reasonable.

[10](Doc. 195 at 10, 14; Doc. 246 at 7-8).

[11]The parties selected Missouri law to govern the construction of their agreements. (Doc. 236, Exhibit 1 at 12, ¶ 22). A computerized search reflects that over 1,000 Missouri cases have employed the phrase "fair market value," while only six have used the terms "fair and equitable price" and/or "fair and equitable value."

well understood term and employ instead a term virtually unknown in the literature. That the parties did not use the familiar term "fair market value" of itself demonstrates that the contract can reasonably be construed as intending valuation by some objective measure other than fair market value.[12]

Block's final effort to avoid ambiguity is to cite cases excluding expert opinions that assumed a limited term contract would be renewed by the client's opponent. (Doc. 254 at 11-12). In neither case was valuation based on "fair and equitable price," and in neither had the client's opponent represented that it would extend the contract beyond its termination date.

The evidence and argument presented to the Court reflects that the term "fair and equitable price," either standing alone or in the context of paragraph 24 and the entirety of the franchise agreements, does not unambiguously require valuation of the businesses as of the time of termination but may reasonably be construed as allowing valuation as of a later date. Because the term is ambiguous in this regard, the parties may introduce appropriate extrinsic evidence to resolve the ambiguity.[13]

Block insists that, regardless of any ambiguity in the term "fair and equitable price," evidence of the parties' expectations cannot be introduced because the effect would be to "denigrate" the decision of the Missouri Court of Appeals. (Doc. 236 at 3). It is true that the Missouri opinion holds that paragraph 18 provides for five-year terms renewable only upon mutual assent. This ruling is conclusive as to the meaning of paragraph 18, and it precludes the plaintiffs from arguing or suggesting that paragraph 18 (with or without assistance from paragraph 25 or any other provision of the agreements) means anything other than what the Missouri Court said it means. This is the "res judicata" effect invoked by Block, (Doc. 236 at 8-9), and it precludes the plaintiffs from arguing or suggesting that the Missouri decision was "wrong or unfair," that Block's termination of the franchise agreements was

---

[12]Indeed, Block adopts the admissions of the plaintiffs' experts that "the contractual language actually used has no standard meaning" and is "not a standard of valuation that is defined in appraisal literature." (Doc. 195 at 11; Doc. 254 at 9).

[13]To the extent the plaintiffs suggest that the franchise agreements unambiguously require valuation as of the date of expected termination, (Doc. 204 at 8), the Court rejects the argument, for reasons mirroring those supporting its conclusion that the agreements do not unambiguously require valuation as of the date of actual termination.

wrongful or unfair, or that a fair and equitable price should account for such wrongfulness or unfairness.[14]

But the Missouri ruling does not, as Block supposes, preclude evidence of the parties' expectations as to the agreements' duration. That ruling establishes that the parties intended the agreements *could* be terminated at the end of any five-year term, but it does not establish that they intended the agreements *would* be terminated at any given opportunity. The purpose of the plaintiffs' proposed evidence is to show that the parties intended not to exercise any right to terminate and that Armstrong ordered his affairs accordingly. The right to end a contract under paragraph 18 prior to the parties' expectations as to when the right would be exercised does not bestow the right to so end the contract without financial consequences; those consequences are governed by paragraph 24 and its provision for a fair and equitable price. Block complains that its right under paragraph 18 to terminate at the end of any five-year term will be "rendered meaningless, useless or redundant," in violation of Missouri rules of contract interpretation, if the exercise of that right requires it, under paragraph 24, to pay as if the contract were perpetual (i.e., to Armstrong's retirement). (Doc. 236 at 10-11). No known rule of contract construction, however, requires that all potential exercises of a contractual right be profitable to the party exercising the right, and regardless of that party's conduct. If exercise of its right to terminate proves costly to Block, it will be because the jury (after finding that the parties intended the ambiguous term "fair and equitable price" to provide for valuation as of the time of expected termination) finds that Armstrong's expectations as to when the agreements would be terminated were fueled by Block's representations — conduct entirely within the control of Block to

---

[14]Because "[t]he cardinal rule in contract interpretation is to ascertain the intention of the parties and to give effect to that intention," *Armstrong Business Systems v. H&R Block*, 96 S.W.2d at 874, the Missouri Court's ruling establishes as a matter of law that the parties intended that either party had the power to unilaterally terminate the agreements at the end of any five-year term. *See also id.* at 877 ("The language of the franchise agreements ... precludes any contention that the parties intended compulsory, perpetual relationships."). It therefore precludes the plaintiffs from relying on the language of the agreements to support Armstrong's expectations as to their duration — unless Block somehow opens the door.

prevent.[15]

Finally, Block argues that evidence of the parties' expectations as to duration should be excluded under Rule 403. (Doc. 236 at 12). The prejudice, confusion and waste of time it envisions trace primarily to concerns of conflict with the Missouri appellate ruling, including having to justify its decision to terminate the agreements. Because this order does not allow the plaintiffs to challenge the correctness or fairness of the Missouri ruling or the termination of the agreements, the concerns of Rule 403 are not implicated, certainly not to the extent they "substantially outweig[h]" the probative value of the evidence.

### B. Good Faith and Fair Dealing.

In a single sentence, the plaintiffs posit that evidence of Armstrong's expectations is relevant to their "bad faith claim." (Doc. 246 at 9). Since they have asserted no "bad faith claim," they presumably refer to their claim for breach of the covenant of good faith and fair dealing. (Doc. 162 at 33-34). As discussed in the Court's order granting Block's motion in limine to preclude new claims and arguments that Block breached this covenant, that cause of action is explicitly and unambiguously limited to the assertion that Block breached the covenant by failing to pay the minimum amount required by paragraph 24. Armstrong's expectations cannot possibly be relevant to that claim.

---

[15]In the alternative, the plaintiffs argue that "ABS cannot be properly valued without taking into account its anticipated future earnings, which by necessity, requires evidence of the parties' expectations." (Doc. 246 at 8). They base this belief on two premises: (1) that the franchises should be valued as going concerns; and (2) that "the value of [a] business as a going concern ... must necessarily take into consideration its future profit-earning potential." (*Id*. (internal quotes omitted)). Assuming for present purposes that both propositions are correct, it does not follow that the owner's expectations as to how long his franchise would last — much less the source of those expectations — are relevant to this calculation; the business either has profit-earning potential of a certain magnitude at the relevant moment, or it does not. The plaintiffs' alleged plans for expansion of the business may be relevant to a determination of that profit-earning potential but, even if they are, no explanation of the durational expectations which influenced those plans is relevant to that determination — unless Block challenges the reasonableness of the plans in a way that opens the door for the plaintiffs to justify them by citing those expectations.

**C. Equitable Estoppel.**

Finally, the plaintiffs argue that evidence of Armstrong's expectations is relevant to their claim for equitable estoppel. (Doc. 246 at 9-12). As discussed in the Court's order denying Block's motion to clarify that this claim has been dismissed, the equitable estoppel count as pleaded in the third amended complaint and its predecessors encompasses the claim that Block is equitably estopped from paying a "fair and equitable price" that does not take into consideration Armstrong's expectations as to the duration of the franchise agreements. Under such a claim, calculation of a fair and equitable price necessarily requires evidence of Armstrong's expectations. Block has not offered to explain how, given this allegation of equitable estoppel, evidence of Armstrong's expectations could be irrelevant under Rule 401 or due to be excluded under Rule 403.

## CONCLUSION

For the reasons set forth above, Block's motion in limine to exclude evidence concerning the expectations of plaintiff Norris Armstrong concerning the duration of the franchise agreements is **granted** to the extent that the plaintiffs and their counsel are ordered: (1) not to draw the jury's attention to paragraphs 18 and 25 of the franchise agreements; (2) not to suggest that the language of the franchise agreements supports or underlies Armstrong's expectations as to the duration of the agreements; (3) not to suggest that the decision of the Missouri Court of Appeals was wrong or unfair; and (4) not to suggest that Block's termination of the agreements was wrong or unfair. In all other respects, the motion is **denied**.

DONE and ORDERED this 14th day of October, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE