**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NORRIS ARMSTRONG, et al.,** | ) | **PUBLISH** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 03-0148-WS-C** |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————— | ) | |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 03-0635-WS-C** |
| | ) | |
| **NORRIS ARMSTRONG, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on a motion in limine filed by the Block defendants ("Block") to exclude evidence relating to settlement offers and discussions.  (Doc. 208).  The parties have filed briefs in support of their respective positions, (Docs. 209, 225, 239, 282), and the motion is ripe for resolution.  After carefully considering the foregoing materials, the Court concludes that the motion is due to be denied.

**BACKGROUND**

In 1999, Block was engaged in litigation with a number of its major franchisees ("the Missouri litigation").  Armstrong Business Services, Inc., ("ABS"), one of the plaintiffs herein, was a party to that lawsuit.  (Doc. 209 at 2).  The parties engaged in settlement negotiations in October 1999 and, the following month, a representative of the major franchisees sent Block a letter summarizing what he

believed to be the parties' agreement for settlement of the Missouri litigation.  (*Id*. at 2-3 & Exhibit 1).

Under a paragraph entitled, "Term of Contract," the letter contemplates amending each existing

franchise agreement to provide for a 60-year term with automatic 10-year renewal periods and to

provide Block, at the conclusion of each such interval, a purchase option "at a price equal to four times

gross revenues," ("the multiplier"), subject to certain deductions.  (*Id*.).[1]  No settlement along these

lines was finalized.  (*Id*. at 9).

　　　　The parties herein operated under franchise agreements providing that, in the event of

termination for any reason other than sale to Block, "Block shall pay a fair and equitable price to

Franchisee for Franchisee's business operated hereunder," subject to certain minima.  (Doc. 236,

Exhibit 1 at 12-13, ¶ 24).  In this lawsuit the plaintiffs demand payment of a "fair and equitable price"

pursuant to paragraph 24.  Plaintiff Armstrong in calculating his net worth, and his experts, in calculating

a fair and equitable price, rely on the multiplier found in the November 1999 letter.  Block objects that

these efforts, and any other attempts to utilize the multiplier in evidence presented to the jury, are barred

by Federal Rules of Evidence 408, 402 and 403.  The Court considers these arguments in turn.


**DISCUSSION**

**I.  Rule 408.**

> 　　　　Evidence of ... offering or promising to furnish ... a valuable consideration
> in compromising a claim which was disputed as to either validity or amount, is not admissible to
> prove liability for or invalidity of the claim or its amount.  Evidence
> of conduct or statements made in compromise negotiations is likewise not admissible.
> ...

Fed. R. Evid. 408.  Block concedes that the November 1999 letter constituted a "settlement offer,"[2]

and the plaintiffs concede that they intend to use the letter and the multiplier found therein  to prove the

---

[1]Block terms the letter a " proposed new franchise agreement."  (*Id*. at 9).  It has not, however, challenged the letter's representation that Block had agreed in principle to the terms expressed therein.  On the contrary, Block describes the multiplier as part of "the settlement offer made by Block in 1999." (*Id*. at 8; *accord id.* at 10).

[2](Doc. 209 at 8).  Thus, only the first sentence of Rule 408 is implicated.

amount of their claim for a fair and equitable price.  The parties' only real disagreement focuses on the scope of the words, "claim" and "disputed."

By its terms, Rule 408 precludes the admission of evidence concerning an offer to compromise "a claim" for the purpose of proving (or disproving) the fact or amount of  "the claim."  Gauged either by standard usage of the English language or by accepted rules of statutory construction, the definite article "the" limits "the claim" as to which evidence may not be admitted to the claim previously referenced, i.e., the claim which was the subject of a settlement offer.[3]  Thus, "Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity [or amount] *of the claim under negotiation*."  *Vulcan Hart Corp. v. National Labor Relations Board*, 718 F.2d 269, 277 (8th Cir. 1983)(emphasis added).[4]  The Court concludes that Rule 408

---

[3]*See, e.g.*, Merriam-Webster's Collegiate Dictionary 1221 (10th ed. 1994)("the" is "used as a function word to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance"); *American Business Association v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000)("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'")(internal quotes omitted); *In re:  Top Grade Sausage, Inc*., 227 F.3d 123, 129 (3rd Cir. 2000)(use of "the trustee" in 11 U.S.C. § 330(a)(1)(A) referred back to "a trustee" as used in the preceding subsection); *Miller's Apple Valley Chevrolet Olds-Geo, Inc. v. Goodwin*, 177 F.3d 232, 234 (4th Cir. 1999)(where the first sentence of 49 U.S.C. § 32710(b) authorized "[a] person" to bring suit while the second sentence authorized a court to award attorney's fees to "the person," "[t]he definite article defines 'person' to be a particular person and not any person [, and] [t]he only antecedent possible is the 'person' described in the first sentence ....").

[4]*Accord Uforma/Shelby Business Forms, Inc. v. National Labor Relations Board*, 111 F.3d 1284, 1293-94 (6th Cir. 1997)("'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'")(quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5314 (1st ed. 1980)); *Broadcort Capital Corp. v. Summa Medical Corp*., 972 F.2d 1183, 1194 (10th Cir. 1992)(Rule 408 does not apply when the settlement discussions "involved a different claim than the one at issue in the current trial"); *Bradbury v. Phillips Petroleum Co*., 815 F.2d 1356, 1363 (10th Cir. 1987)("Read literally, the rule does not appear to cover compromises and compromise offers that do not involve the dispute that is the subject of the suit, even if one of the parties to the suit was also a party to the compromise."); *see also Zurich American Insurance Co. v. Watts Industries, Inc*., 417 F.3d 682, 689 (7th Cir. 2005)("The balance is especially likely to tip in favor of

unambiguously requires that the claim as to which a settlement offer was made and the claim at issue in the litigation in which the offer is proffered as evidence must be the same claim.

Block's filings demonstrate that it cannot meet this "same claim" requirement.  In its opening brief, Block insists that the November 1999 settlement proposal "was intended to resolve a panoply of issues, but the 'fair and equitable' price of ABS's business was not among them."  (Doc. 209 at 9 n.5). This language appears to constitute an admission that the "fair and equitable price" provision of paragraph 24 was not part of the November 1999 settlement proposal and thus not a "claim" as to which a settlement offer has been made for purposes of Rule 408.  Belatedly realizing its conundrum, Block in its reply brief reverses course, noting that by the time the settlement negotiations occurred and the November 1999 settlement proposal circulated, Block had filed a counterclaim seeking a declaration that it was entitled not to renew the major franchisees' franchise agreements when their current terms ended.  Because such a non-renewal would trigger the payment obligations of paragraph 24, Block suggests that the calculation of a "fair and equitable price" was "a necessary part of the complex of issues that the parties sought to resolve in the 1999 mediation."  (Doc. 239 at 6).

Even if Block had not already admitted the exact opposite, its reconsidered position would fail. Block's counterclaim in the Missouri litigation may well represent a "claim" under Rule 408 as to whether Block could lawfully non-renew, and it may well be that this claim was both "disputed" and encompassed sub silentio within the November 1999 settlement proposal.  However, a disputed claim as to whether non-renewal could properly occur is not a disputed claim as to the payment due upon non-renewal.[5]  It could certainly blossom into such a disputed claim should the parties take conflicting stands on the amount that would be owed, but it does not itself constitute such a disputed claim.

It is likely that, had anyone asked the parties to the Missouri litigation what they perceived as

---

admitting evidence when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered."); *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 655 (4th Cir. 1988) (appearing to recognize that "offering an item of evidence is not in terms barred by Rule 408" if it is not offered "to show the validity or invalidity of the compromised claim").

[5]It is hardly unusual for parties to disagree as to whether their contractual relations can be terminated while agreeing as to the financial implications of such a termination should it occur.

the measure of a "fair and equitable price" under paragraph 24, they would have given responses as divergent as those they offer today.  That they may have held such secret opinions, however, cannot establish the existence of "a claim which was disputed" at the time of the November 1999 settlement proposal.  A "claim" under Rule 408 involves the assertion of a right.  This is shown both by common usage[6] and by the rule's requirement that the claim be disputed, as one can hardly dispute a claim of which he is unaware.[7]  Similarly, for a claim to be "disputed," there must be "at least an apparent difference of opinion between the parties," *Dallis v. Aetna Life Insurance Co.*, 768 F.2d 1303, 1307 (11th Cir. (1985), and the difference could scarcely be apparent if the parties' views were unexpressed.[8]

      In summary, the calculation of a fair and equitable price was not an issue, and was not a "claim that was disputed," as of the November 1999 settlement proposal.  Block, however, argues that the valuation of fair and equitable price need not itself have been a disputed claim in the Missouri litigation so long as it is satisfactorily related to the parties' actual disputed claims.  In support, Block cites to a line of cases applying Rule 408 to prohibit either the plaintiff or the remaining defendant from introducing evidence of the plaintiff's settlement with other defendants or potential defendants.  *See, e.g., Branch v. Fidelity & Casualty Co.*, 783 F.2d 1289, 1294 (5th Cir. 1986)*; McInnis v. A.M.F.,*

---

[6]*See* Black's Law Dictionary 240 (7th ed. 1999)(defining "claim," in part, as "[t]he assertion of an existing right").

[7]Assertion of a  claim for purposes of Rule 408 does not require articulation of a specific legal cause of action, so long as the general contention has been adequately raised.  *See Trebor Sportswear Co. v. The Limited Stores, Inc*., 865 F.2d 506, 510 (2nd Cir. 1989)(where the buyers stopped payment in response to what they viewed as the seller's repudiation of the contract, and where their settlement proposal referenced multiple "current issues" that needed to be resolved to "allow us to go forward with our business relationship," their claim for breach of contract, though not so identified, was encompassed within the proposal).

[8]*Cf. S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District*, 50 F.3d 476, 480 (7th Cir. 1995)(for purposes of Rule 408, "[a] dispute arises only when a claim is rejected at the initial or some subsequent level."); *Deere & Co. v. International Harvester Co.*, 710 F.2d 1551, 1556-57 (Fed. Cir. 1983)("Rule 408, on its face, is limited to actual disputes over existing claims" and cannot apply when the parties merely suspect that they will one day be drawn into conflict).

*Inc.*, 765 F.2d 240, 246-48 (1st Cir. 1985); *United States v. Contra Costa County Water District*, 678 F.2d 90, 91-92 (9th Cir. 1982). In each case, the plaintiff's claims against the alleged wrongdoers arose from a single event,[9] which a respected commentator terms the "same transaction."[10]

The "same transaction" test predates Rule 408 by at least four decades.[11] As in the cases cited above, it has often been applied in situations involving one plaintiff, multiple wrongdoers and one event, although it has also been applied in situations involving multiple plaintiffs, one wrongdoer and one event.[12] Use of a "same transaction" test in such circumstances is arguably consistent with Rule 408's "same claim" requirement, because the grievances of one or more injured parties against one or more potential wrongdoers arising from a single event may reasonably be viewed in the aggregate as comprising a single "claim" for purposes of Rule 408, with the "claim" constituting the universe of grievances arising from the event. From this perspective, settlement between any two such parties

---

[9]*See Branch v. Fidelity & Casualty*, 783 F.2d at 1290-91 (one plaintiff injured, and two plaintiffs' decedents killed, in an offshore oil platform accident settled with their employer and pursued the rig owner); *McInnis v. A.M.F.*, 765 F.2d at 241-42 (motorcyclist injured in collision with motor vehicle settled with motorist and sued motorcycle manufacturer); *United States v. Contra Costa County Water District*, 678 F.2d at 91 (plaintiff canal owner settled with adjacent landowner whose conduct imperiled the canal and required plaintiff to construct a retaining wall, then sued water district under contract with owner for balance of cost).

[10]Jack B. Weinstein, Margaret A. Berger & Joseph M. McLaughlin, 2 Weinstein's Evidence ["Weinstein's"] ¶ 408[04] at 408-30 (1996)("A more common situation involves the attempted use of a completed compromise of a claim arising out of the same transaction between a third person and a party to the suit being litigated. Rule 408 codifies the general practice of the federal courts in making compromise agreements inadmissible in such circumstances, as proof of liability for, or invalidity of, the claim.")(footnotes omitted).

[11]*See Hawthorne v. Eckerson Co.*, 77 F.2d 844, 847 (2nd Cir. 1935)("Settlements have always been looked on with favor, and courts have deemed it against public policy to subject a person who has compromised a claim to the hazard of having a settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction.").

[12]*See, e.g., id.*; *Sun Oil Co. v. Govostes*, 474 F.2d 1048, 1049 (2nd Cir. 1973).

would be considered settlement of part of the same claim as remains between and among the affected parties. The present fact pattern, however, does not fall within the limited purview of the "same transaction" standard as described above. Specifically, it does not involve disagreement among three or more parties and settlement (or attempted settlement) between two of them; more generally, and as discussed above, it does not involve multiple grievances all of which existed at the time of the settlement (or attempted settlement) of some of them.

Undeterred, Block cites an appellate opinion applying "same transaction" terminology to a fact pattern far removed from those originally associated with "same transaction" analysis. In *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652 (4th Cir. 1988), the two shareholders of a closely held corporation fell out and, over the next eight years, pursued five or six lawsuits, "all arising out of the breakup of a business in the year 1980." *Id.* at 653. During negotiations in 1983 to settle two of the earliest suits, counsel for one party made statements indicating that his client intended to engage in certain anti-competitive activity against his former associate. *Id.* at 653-54 & n.5. The former associate's company filed *Dupuy* in 1984, alleging antitrust violations and seeking to use counsel's statements to support its claim. *Id.* at 652 n.2, 655; *Fiberglass Insulators, Inc. v. Dupuy*, 1986 WL 13356 (D.S.C. 1986). The Fourth Circuit embraced the trial court's determination that "this case [and the prior case in which the damaging statements were made] arose out of the same transaction, i.e., the breakup of the business relationship." 856 F.2d at 655. The *Dupuy* Court thus sanctioned the exclusion of statements made in settlement negotiations concerning one claim to prove up another claim that did not even arise until after the statements were made.

Block's final authority, *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356 (10th Cir. 1987), went even further. The defendant was involved in a uranium exploration project in a corner of Colorado and, over the course of fifteen months, it and its contractor managed to trespass on and/or damage the property of nine residents in eight separate incidents, *id.* at 1358-59, 1362, some of which disputes it settled. The Tenth Circuit acknowledged that the landowners' difficulties "arguably involved claims that arose out of different events and transactions," but it concluded that "the stronger argument is that these claims are related inasmuch as they arose in the course of the same large scale uranium

-7-

exploration project operated by Phillips, and because they are similar enough to the claim sued upon in this case to be relevant." *Id*. at 1363. *Bradbury* thus abandoned the "same transaction" standard altogether in favor of a vague "related[ness]" test.[13]

*Bradbury* matches the farthest known expansion of Rule 408,[14] but it is one the Eleventh Circuit appears poised to reject. In *Dallis v. Aetna Life Insurance Co.*, 768 F.2d 1303 (11th Cir. 1985), the plaintiff sued his insurer for failing to pay for his wife's cancer treatment. In support of his claim, he sought to introduce evidence that the insurer had paid for similar treatment of another insured under a similar policy. *Id*. at 1304, 1306. The Court held that Rule 408 did not apply because, since the insurer had not contested the fact or amount of its liability to the other insured, there had been no "compromise" of that claim. *Id*. at 1307. However, the Court also noted with apparent skepticism the insurer's argument that the "same transaction" rule could be "extend[ed] ... to forbid evidence of a settlement between one party and a third party when such settlement involves similar circumstances to, but does not arise out of, the transaction with which the litigation is concerned." *Id*. at 1306-07.

The Eleventh Circuit's dubiousness is justified. Since Rule 408's enactment in 1974, excluding evidence of settlements and offers has depended on a showing that the "same claim" was the subject of both the prior discussions and the lawsuit in which the evidence is offered. Applying the rule to non-contemporaneous incidents involving third parties and "related" to the subject litigation only by the identity of the defendant and the "similar[ity]" of the conduct would effectively read the "same claim" requirement out of existence.

*Dupuy*, because it purported to apply the "same transaction" standard, presents a more subtle error. As noted, the "same transaction" test can sometimes be consistent with the "same claim" requirement of Rule 408, as when the test is applied to a single event involving multiple parties and

---

[13]This portion of *Bradbury* is actually dicta, as the Court ultimately held that the challenged evidence was admissible pursuant to the "other purpose" exception to Rule 408. 815 F.2d at 1364.

[14]*See also Hudspeth v. Commissioner*, 914 F.2d 1207, 1210, 1213 (9th Cir. 1990) (evidence of the Commissioner's timber valuation in settling a similar case could not be used by the taxpayers to show the value of their timber). Like *Bradbury*, this portion of *Hudspeth* is dicta, because the Court held the evidence admissible to prove bias under the "other purpose" exception. *Id*. at 1214-15.

-8-

resulting in multiple grievances.  However, because the reach of the term "transaction" is much broader than that of the term "claim," the indiscriminate use of  "same transaction" in lieu of "same claim" will inevitably result in applications of Rule 408 beyond its proper confines.  *Dupuy* represents such an example.  Whether or not five or six lawsuits spanning eight years following the dissolution of a business relationship can reasonably be viewed as constituting a single transaction, by no known measurement can causes of action regarding dissolution and a cause of action regarding antitrust violations occurring years later be viewed as a single claim.

It may be assumed for present purposes that application of *Dupuy* to the facts of this case would result in the invocation of Rule 408 to exclude evidence of the November 1999 settlement proposal despite the fact that the calculation of a fair and equitable price under paragraph 24 was not covered by the proposal and was not even contested by the parties until long afterwards, on the theory that all disputes ever arising out of the parties' franchise agreements, regardless of when they arose, did so out of a single "transaction" represented by those agreements.  The Court, however, is persuaded that the Eleventh Circuit would not adopt an interpretation of Rule 408 so at war with its language.

The Eleventh Circuit's decisions in which Rule 408 was deemed applicable tend to be unremarkable applications of the rule unmistakably involving the same claim as was involved in the preceding settlement negotiations.[15]   While the Court appears to have embraced the original "same transaction" standard,[16] it has brushed off the suggestion that it extend that rule beyond its historical confines.  *See Dallis v. Aetna Life Insurance, supra.*  Nothing in these decisions suggests the Court would accept Block's invitation to re-write Rule 408's "same claim" requirement as a lower, "same

---

[15]*See Blu-J, Inc. v. Kemper C.P.A. Group*, 916 F.2d 637,641-42 (11th Cir. 1990); *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1106-07 (5th Cir. 1981).

[16]In *Lampliter Dinner Theater, Inc. v. Liberty Mutual Insurance Co.*, 792 F.2d 1036 (11th Cir. 1986), a bad faith action, the Court applied Rule 408  to the insured's effort to introduce evidence that the insurer belatedly settled two wrongful death suits against the insured arising from a single accident.  Id. at 1038, 1042.  Because the insured's grievance against its insurer arose from the same event as that which precipitated the suits against it, *Lampliter* represents a defensible application of the "same transaction" rule to achieve a proper "same claim" result.

transaction" threshold.[17]

      Block, like most of its authorities, appeals to public policy in favor of its approach. There is no question that both the drafters and the enacting Congress perceived the purpose of Rule 408 as the encouragement of negotiated settlements,[18] and the Eleventh Circuit has repeatedly recognized this philosophical impetus to the rule.[19]  Courts, however, enforce rules, not simply the policy prompting their enactment, and Rule 408 cannot be extended beyond the reach its language will allow, regardless of the policy implications.[20]  It may be noted, however, that most rules of law are crafted to balance competing concerns, and their language is usually chosen carefully in an effort to strike the desired compromise among those concerns.  Rule 408's policy of encouraging settlements is necessarily in tension with the policy behind Rule 402 of placing relevant evidence before the factfinder. Nothing would be less surprising than to learn that the "same claim" requirement of Rule 408 represents

---

[17]Block argues at length that the Eleventh Circuit "does not attempt to narrowly parse particular claims, but instead" focuses on whether the materials at issue were intended to be part of settlement negotiations.  (Doc. 239 at 3-5 (citing *Blu-J v. Kemper*, 916 F.2d at 642)).  Block is confusing two separate elements of Rule 408.  When the proffered evidence is not a completed settlement or a settlement offer, it must of course be shown that the conduct or statement occurred in connection with settlement negotiations, as *Blu-J* and other cases interpreting the second sentence of Rule 408 unsurprisingly require.  That element, however, is in addition to the "same claim" requirement of the first sentence, not in lieu thereof.

[18]Fed. R. Evid. 408, advisory committee note, 1972 proposed rules ("A more consistently impressive ground [for the common-law rule which Rule 408 supersedes] is promotion of the public policy favoring the compromise and settlement of disputes."); *id.* 1974 enactment ("[T]he encouragement of [negotiated settlements] is the purpose of the rule.").

[19]*Westchester Specialty Insurance Services, Inc. v. U.S. Fire Insurance Co.*, 119 F.3d 1505, 1512 (11th Cir. 1997); *Lampliter Dinner Theater v. Liberty Mutual Insurance*, 792 F.2d at 1042; *Ramada Development Co. v. Rauch*, 644 F.2d at 1106; *Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976).

[20]"Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, [citation omitted], though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408 ...." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997).

a deliberate balancing of those conflicting goals.

Block has offered no supportable basis for concluding that the present lawsuit concerning the fair and equitable price of the plaintiffs' franchise agreements is the same claim that was the subject of Block's settlement offer in the Missouri litigation.  Accordingly, the Court concludes that Rule 408 does not bar the plaintiffs' usage of the November 1999 settlement proposal or evidence of its multiplier in this litigation.

## II.  Rule 402.

"Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Block argues that its offer of a decennial purchase option at a multiplier of four times gross revenues is not relevant to the calculation of a fair and equitable price under paragraph 24 "because it reflected the value Block placed on avoiding costly litigation against all of its largest franchisees with uncertain results."  (Doc. 209 at 11).  As the advisory committee notes to Rule 408 make clear,[21] there is no prophylactic principle that settlement offers lack relevance.[22]  On the contrary, the view of Dean Wigmore that the exclusion of settlement offers is justified based on their lack of relevance "has generally been rejected, since an offer may in fact be quite probative as to liability or damages, particularly if the offered amount is close to the figure that represents the adversary's maximum supportable damage claim."  *American Society of Composers, Authors and Publishers v. Showtime/The Movie Channel, Inc*., 912 F.2d 563, 580 (2nd Cir. 1990).[23]  Other than its ipse dixit in brief, Block offers nothing to demonstrate that its settlement proposal was in fact so driven by risk avoidance as to suggest nothing about fair and

---

[21]While some argue that the exclusion of settlement offers is justified because such evidence is irrelevant, "[t]he validity of this position will vary as the amount of the offer varies in relation to the size of the claim and may also be influenced by other circumstances."  The "more consistently impressive ground" favoring the rule is the public policy of encouraging settlements.

[22]Indeed, the very existence of Rule 408 stands as proof that settlement offers are not perforce irrelevant, else the rule would be superfluous as redundant with Rule 402.

[23]Nor, contrary to Block's suggestion, (Doc. 195 at 31-32), did Judge Butler rule that the settlement proposal is legally irrelevant.

equitable price, and the Court cannot reach that conclusion on its own.

In its reply brief Block changes tack, arguing the settlement proposal is irrelevant as a matter of logical necessity.  According to Block, if the calculation of a fair and equitable price was not a "claim which was disputed" at the time of the November 1999 settlement proposal (and, as discussed in Part I, it was not), then it cannot be relevant to that calculation.  Block's position will come as a surprise to those involved in real estate, where the purchase price of other property is the bedrock of valuation. That Block was willing to pay four times gross revenues in exercising a decennial option to purchase a franchise surely says something about the fair and equitable price of the same franchise upon its termination, just as the sales price of one piece of property says something about the fair market value of another.  How much it says, as in the real property context, depends on an evaluation of similarities and dissimilarities but, except on a showing of gross differences rendering any comparison untenable, that weighing is for the jury, not the Court as gatekeeper under Rule 402.

Block identifies only a single difference between its November 1999 settlement proposal and present fair and equitable price: when the proposal was made, Block was concerned that its franchise agreements could be ruled perpetual, but in 2002 the Missouri Court of Appeals ruled they would expire naturally at the conclusion of any five-year term absent mutual agreement to renew.  (Doc. 239 at 8 n.2).[24]  It is reasonable to suppose that Block would be willing to pay more for a franchise that it can obtain only on the consent of the franchisee than it would pay when it can end the franchise unilaterally by refusing to renew.  The difficulty is that Block has failed to show that the "fair and equitable price" of a franchise under paragraph 24 is to be based on Block's bargaining power.[25]  The Missouri opinion thus furnishes no grounds to exclude the settlement proposal as legally irrelevant.

Because Block has not drawn into question the November 1999 settlement proposal's "tendency to make the existence of any fact that is of consequence to the determination of the action

---

[24]*See Armstrong Business Services, Inc. v. H&R Block*, 96 S.W.3d 867 (Mo. App. 2002).

[25]As discussed in the Court's order granting in part Block's motion in limine to exclude the testimony of the plaintiffs' valuation experts, the meaning of "fair and equitable price" is ambiguous and thus a question for the jury to resolve.

-12-

more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, Rule 402

does not bar the plaintiffs' usage of the settlement proposal or evidence of its multiplier in this litigation.

## III.  Rule 403.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of the issues [or] misleading the jury ...."  Fed. R. Evid.

403.

Block argues that it "would be substantially prejudiced were ABS permitted to flaunt a

proposed settlement term as the purported actual value of its business."  (Doc. 209 at 11).  The point

of all evidence presented at trial is to prejudice the opponent; Rule 403 is implicated only when such

prejudice is "unfair."  Block does not allege that introduction of the November 1999 settlement

proposal risks unfairly prejudicing it, much less attempt to show that any such risk "substantially

outweigh[s]" the evidence's probative value.[26]

Block makes two related arguments concerning jury confusion.  First it posits that the

November 1999 settlement proposal will itself confuse the jury.  Second, it argues that, if the settlement

proposal and its multiplier are not excluded, it intends to offer evidence of its (presumably smaller)

payments to other franchisees under paragraph 24 upon termination of their franchise agreements

following the Missouri litigation.  The resulting "battle of settlement proposals,"  Block argues, will only

confuse the jury.  (Doc. 209 at 11).

Block has not explained how the November 1999 settlement proposal risks confusing the jury,

much less how any such risk substantially outweighs the proposal's probative value. Assuming without

---

[26]According to Block, prior to the October 1999 negotiations in the Missouri litigation the
plaintiffs agreed that communications relating to the subject matter of the negotiations would be
inadmissible in any judicial proceeding.  Block vaguely offers this as a reason to exclude the evidence
under Rule 408, (Doc. 239 at 4-5), but the argument might have been more profitably presented as
showing the unfairness of allowing the evidence under Rule 403, or as an independent ground of
exclusion.  At any rate, while Block has complained about the plaintiffs' conduct, it has not identified
any legal authority supporting exclusion of the evidence on this basis.  This order does not preclude
Block from doing so at a later date.

deciding that evidence of Block's other "settlement proposals" is otherwise admissible under Rule 408 and other rules, Block has not explained why, if *its* evidence stands to confuse the jury, the *plaintiffs'* evidence should be excluded as a cure.

In summary, Rule 403 does not require exclusion of the November 1999 settlement proposal or evidence of its multiplier in this litigation.

## CONCLUSION

For the reasons set forth above, Block's motion in limine to exclude evidence relating to settlement offers and discussions is **denied**.

DONE and ORDERED this 14th day of October, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE