IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **NORRIS ARMSTRONG, et al.,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 03-0148-WS-C |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 03-0635-WS-C |
| | ) | |
| **NORRIS ARMSTRONG, et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

**ORDER**

This matter is before the Court on two related motions filed by the Block defendants ("Block"): a motion to preclude the presentation of Norris Armstrong as a plaintiff, (Doc. 256), and a motion in limine to exclude evidence relating to Armstrong's health. (Doc. 261). The plaintiffs have filed a response, (Doc. 270), and Block a reply, (Doc. 278), and the motions are ripe for resolution. After carefully considering the foregoing materials, the Court concludes that both motions are due to be granted.

**BACKGROUND**

The original franchisee's rights and obligations under the franchise agreements at issue in this case were assigned to Armstrong in 1989, with Block's approval. Three years later, Armstrong assigned his rights under the agreements to plaintiff Armstrong Business Services, Inc. ("ABS"), again

with Block's approval. Armstrong was and is ABS's sole shareholder. (Doc. 241 at 2, ¶¶ 4-5).

The assignment to ABS was accomplished through an "Assignment Agreement," which reads in pertinent part as follows:

> 1. <u>Assignment</u>.  The Franchisee hereby transfers, assigns and delivers to the Controlled Entity all of the Franchisee's right, title and interest in and to the Major Franchise Agreement(s) and any and all deposits held by the Franchisor under the Major Franchise Agreement, together with all right, title and interest in any subfranchises granted by Franchisee under the Major Franchise Agreement, in each case subject to all the terms, covenants, conditions and obligations incumbent upon the Franchisee under the Major Franchise Agreement and any subfranchises granted thereunder.

(Doc. 278, Exhibit 1 at 2).

In conjunction with his assignment to ABS, Armstrong executed a "Notice of Transfer to Controlled Entity," which reads as follows:

> The undersigned Franchisee hereby gives notice to you of the transfer and assignment of certain Major Franchise Agreement(s) (identified in the attached Assignment Agreement) to the entity described in said Assignment Agreement.
> The undersigned Franchisee acknowledges and agrees that, notwithstanding such transfer and assignment, the undersigned continues to remain liable for the prompt and faithful performance of all terms, covenants and conditions of said Major Franchise Agreement(s) as provided therein.

(Doc. 278, Exhibit 1 at 1).

In their third and final amended complaint, the plaintiffs asserted fourteen causes of action against Block. (Doc. 162). All five of their fraud causes of action were dismissed by Judge Butler on motion for summary judgment. (Doc. 230 at 11). In the same order, Judge Butler denied the plaintiffs' motion for summary judgment for immediate payment of the minimum amount due under paragraph 24 of the franchise agreements, deeming payment premature prior to trial — a ruling that effectively eliminated Count Fourteen from this lawsuit. (*Id*. at 1-2). Of the remaining eight claims, the plaintiffs have confirmed in writing that three are not being pursued by Armstrong.[1] The five residual claims are

---

[1] "Norris Armstrong, personally, is withdrawing his claims for relief ... for intentional interference with business relationships, slander per se., and slander per quod." (Doc. 256, Exhibit 1).

as follows:

- Count Six: equitable estoppel
- Count Seven: breach of covenant not to compete
- Count Eight: equitable accounting for breach of covenant not to compete
- Count Nine: breach of contract for failure to pay full fair and equitable price
- Count Thirteen breach of implied covenant of good faith and fair dealing

(Doc. 162 at 24-36).

## DISCUSSION

Block argues that, by virtue of his assignment to ABS, Armstrong lacks standing to pursue any of the residual claims. Block further argues that evidence concerning Armstrong's health problems is irrelevant and unduly prejudicial, and thus inadmissible, whether or not Armstrong remains as a plaintiff. The plaintiffs argue that Armstrong retains a personal stake in the litigation and that, in any event, Block has waived the right to object to Armstrong's presence as a plaintiff. They argue that evidence of Armstrong's health is admissible as part of the totality of the circumstances.

### A. Armstrong as a Plaintiff.

The plaintiffs do not dispute that each of the remaining claims depends on the existence of contractual duties running from Block to the particular plaintiff.[2] Neither do they deny that, by the pellucid language of the Assignment Agreement, Armstrong surrendered to ABS any and all contractual rights it had under the franchise agreements. Instead, the plaintiffs seize upon the "Notice of Transfer,"

---

[2]The equitable estoppel claim as pleaded is somewhat vague in this regard, but the plaintiffs' description of the claim in the joint pretrial order makes clear that it presupposes contractual duties running from Block. The plaintiffs pose the triable issues governing their right to recovery under this claim as whether Block is estopped from "terminating the Agreements without paying ABS its fair and equitable price" based on the parties' expectations, and whether Block is estopped "from terminating ABS in the manner that it employed." (Doc. 241 at 18, ¶¶ 5, 10). A third invocation of equitable estoppel raises a defense to Block's counterclaims, (*id.*, ¶ 6), and so is irrelevant to the plaintiffs' claims for affirmative relief.

insisting that it caused "[t]he duties and obligations, both stated and implied, [to] continu[e] to run between Block and Armstrong." (Doc. 270 at 3).

There does, indeed, remain a relation between Block and Armstrong, but it is not one that profits Armstrong. While the Assignment Agreement transferred all of Armstrong's *rights* under the franchise agreements to ABS, the Notice of Transfer ensured that Armstrong remained personally *obligated* to ensure that Block's rights under the franchise agreements would be upheld. The plaintiffs themselves describe the Notice of Transfer as effecting Armstrong's "personal guarantee" of performance under the franchise agreements. (Doc. 270 at 2-3). The relationship so established resulted in Block having demands on Armstrong and Armstrong having none on Block. (*Id*. at 2).[3]

The plaintiffs also argue that Missouri law implies a duty of good faith and fair dealing in every contract, including the one between Armstrong and Block represented by the Notice of Transfer. (Doc. 270 at 3). This may be so, but the plaintiffs' only claim for breach of that covenant, as a recent Court order makes clear, is limited to Block's failure to tender the minimum fair and equitable price required by paragraph 24 of the franchise agreements. (Doc. 298). This is a duty owed ABS under the franchise agreements, not a duty owed Armstrong under the Notice of Transfer.

The covenant of good faith and fair dealing "is not an overflowing cornucopia of wished-for legal duties." *Schell v. LifeMark Hospitals*, 92 S.W.2d 922, 930 (Mo. App. 2002)(internal quotes omitted). Rather, as the plaintiffs themselves insist, (Doc. 270 at 8), the covenant "prevents one party *to the contract* from exercising a judgment conferred by the express terms of the agreement in such a manner that evades the spirit of the transaction or denies the other party the expected benefit *of the contract*." *Home Shopping Club, Inc. v. Roberts Broadcasting Co.*, 989 S.W.2d 174, 179 (Mo. App. 1998)(emphasis added). Because the alleged breach of the covenant arises out of the franchise agreements to which Armstrong was not a party, any failure to pay the minimum price under those agreements did not deny Armstrong the "expected benefit" of such payment. As a matter of law,

---

[3]This arrangement is not quite, as the plaintiffs lament, a "one-way street." (Doc. 270 at 2). In exchange for his guarantee, Armstrong received permission to transfer the franchise agreements to ABS. What he did not receive was the right to pursue Block for alleged violations of the franchise agreements.

Armstrong could have no claim against Block for breach of the implied covenant of good faith and fair dealing.[4]

Bereft of any substantive justification for Armstrong's presence as a party, the plaintiffs attempt a procedural defense. First, they argue that Block has "consistent[ly] acknowledge[d]" that Armstrong retains a "personal stake" in this case. (Doc. 270 at 4). What Block has consistently acknowledged, however — as evidenced by the very record excerpts quoted by the plaintiffs — is that Armstrong remains personally responsible for ensuring compliance with the franchise agreements.[5] Similarly, the plaintiffs argue that Block admitted in the first proposed final pretrial order that "[t]here is no contest ... as to the correctness of the named parties." (Doc. 220 at 1). Of course, that document was filed at a time when the plaintiffs' fraud claims remained pending, and Block's statement simply recognized that, since the fraud claims did not require proof of contractual duties running from Block to Armstrong, he was a proper plaintiff as to those claims. Once Judge Butler dismissed the fraud claims, the parties filed a second proposed pretrial order in which Block expressly "contend[ed] that Norris Armstrong should be removed as a plaintiff ... because he lacks standing to bring the claims that remain following the Court's December 21, 2004 Order [on motion for summary judgment]." (Doc. 241 at 1).

Since it is plain that Block has not conceded the propriety of Armstrong as a plaintiff, the plaintiffs next argue that Block has waited too long to object. They first note Block's failure to assert lack of standing in its original or any amended answer, (Doc. 270 at 5-6), but "[s]tanding is not an affirmative defense that must be raised at risk of forfeiture." *Community First Bank v. National*

---

[4]Nor do the plaintiffs appear to have alleged such a cause of action in favor of Armstrong to begin with. The third amended complaint alleges only that *ABS* demanded payment of the minimum price, that Block responded that it owed *ABS* nothing because *ABS* had competed with Block, that the refusal to pay denied *ABS* the expected benefit of the contract, and that *ABS* suffered damages as a result of Block's breach of the covenant. (Doc. 162 at 33-34). Only in the ad damnum clause, in which "Plaintiffs demand judgment against Block," (*id*. at 34), is Armstrong implicated.

[5]The plaintiffs find it significant that Block accused Armstrong and/or ABS of continuing to operate offices "in *their* formerly licensed territories." (Doc. 270 at 4 (quoting Civ. Action No. 03-635-WS-C, Doc. 1, ¶ 28 (emphasis supplied by the plaintiffs)). The plural possessive merely reflects that Armstrong was the franchisee prior to ABS.

*Credit Union Administration*, 41 F.3d 1050, 1053 (6th Cir. 1994). Treating Block's challenge as one implicating real party in interest concerns, as the plaintiffs urge, (Doc. 270 at 2 n.1), changes nothing, because such an objection need not be raised in the answer as long as it is raised sufficiently in advance of trial. *E.g., Walker Manufacturing, Inc. v. Hoffmann, Inc*., 220 F. Supp. 1024, 1029-30 (N.D. Iowa 2002)(citing cases). Block's motion was timely under this rule.          Finally, the plaintiffs argue that Block's current motion is barred by the scheduling order, which set a deadline of September 2004 for filing dispositive motions. (Doc. 270 at 4-5). Assuming without deciding that the present motion is "dispositive" for purposes of the scheduling order, by its terms that order allows relief from its deadlines "upon a showing of good cause and by leave of Court." (Doc. 151 at 6, ¶ 14). The Court finds such good cause here because, until Judge Butler eliminated the plaintiffs' fraud claims on motion for summary judgment in December 2004, any effort to preclude the plaintiffs from presenting Armstrong as a plaintiff would have been premature. Accordingly, Block is granted leave to pursue the present motion.

### B. Armstrong's Health.

The plaintiffs apparently are prepared to offer evidence that Armstrong has suffered setbacks in his health and that these resulted, in whole or in part, from Block's conduct. As discussed in Part A, however, Armstrong is not a party plaintiff as to any of the claims remaining in this lawsuit. Nor does the plaintiffs' statement of damages in the joint pretrial order preserve any right to seek damages for Armstrong's condition. (Doc. 241 at 29-30). There is ample authority for the proposition that the health of either a party or a witness is inadmissible without a showing that the evidence is relevant and that its relevance substantially outweighs the danger of undue prejudice, including the risk of improper appeal to the jury's sympathy.[6]

---

[6]*E.g., Thompson v. State Farm Fire & Casualty Co*., 34 F.3d 932, 939-40 (10th Cir. 1994); *United States v. Paccione*, 949 F.2d 1183, 1201 (2nd Cir. 1991); *Peronteau v. Gross School Bus Service, Inc*., 2005 WL 281198 at *2 (E.D. Penn. 2005); *Kies v. City of Aurora*, 156 F. Supp. 2d 970, 977 (N.D. Ill. 2001); *Epstein v. Kalvin-Miller International, Inc*., 121 F. Supp. 2d 742, 746 (S.D.N.Y. 2000); *United States v. Crown*, 2000 WL 709003 at *3 (S.D.N.Y. 2000).

In a meandering response, the plaintiffs argue that, in order to derive a "fair and equitable price" under paragraph 24, the jury should be allowed to consider "the totality of the circumstances," including the effect of termination on Armstrong's "health and emotional well being." (Doc. 270 at 7-8). This argument was penned without the benefit of the Court's recent orders, including its ruling that the term "fair and equitable price" unambiguously excludes equitable considerations such as the fairness (or unfairness) of the parties' conduct towards each other. (Doc. 300 at 5). The same order notes the plaintiffs' equation of "fair and equitable price" with "fair and equitable value," (*id*.), reflecting their admission that paragraph 24 is designed to derive a value of the business. An assertion that Armstrong's health deteriorated as a consequence of Block's conduct may suggest the unfairness of that conduct, but it has absolutely nothing to do with the valuation of a business.

The plaintiffs also suggest that Armstrong's health is relevant to the claim for breach of the covenant of good faith and fair dealing. (Doc. 270 at 8-10). As discussed in Part A, Armstrong has no such claim in this lawsuit, and Armstrong's health is not in the slightest degree relevant to ABS's claim that the covenant was breached by Block's failure to make the minimum payment under paragraph 24.

## CONCLUSION

For the reasons set forth above, Block's motion to preclude the presentation of Armstrong personally as a plaintiff at trial, and its motion in limine to exclude evidence relating to Armstrong's health, are **granted**.

DONE and ORDERED this 26th day of October, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE