# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **NORRIS ARMSTRONG, et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | **CIVIL ACTION 03-0148-WS-C** |
| ) | |
| **HRB ROYALTY, INC., et al.,** ) | |
| ) | |
|     **Defendants.** ) | |
| _____) | |
| ) | |
| **HRB ROYALTY, INC., et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | **CIVIL ACTION 03-0635-WS-C** |
| ) | |
| **NORRIS ARMSTRONG, et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

## ORDER

This matter is before the Court on the motion of the Block defendants ("Block") to strike from the proposed pretrial order the plaintiff's allegations regarding Block's procurement of customer files. (Doc. 249). The plaintiff[1] has filed a response, (Doc. 255), and Block a reply, (Doc. 260), and the motion is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion is due to be granted in part and denied in part.

## BACKGROUND

As related in previous orders, Block terminated most of its franchise agreements with the

---

[1] Since the Court granted Block's motion to preclude the presentation of Norris Armstrong personally as a plaintiff at trial, (Doc. 304), Armstrong Business Systems, Inc. ("ABS") remains as the sole plaintiff.

plaintiff in September 2003.[2]  Those agreements read in pertinent part as follows:

> Franchisee covenants that ... for a period of three years after the termination, or the transfer or other disposition of this franchise, he will not so compete as aforesaid within 100 miles of the franchise territory.

(Doc. 236, Exhibit 1 at 4, ¶ 7).  In addition:

> All customer lists, customer names, forms, files and copies of tax returns in Franchisee's custody shall be and remain at all times the property of Franchisee; provided, however, that in the event of termination of this Agreement and upon payment of such monies due as set forth in paragraph 24, such property rights of Franchisee shall vest in Block and Franchisee shall immediately deliver to Block all such customer lists, customer names, forms, files and copies of tax returns.

(*Id*. at 9, ¶ 15).  Paragraph 24, in turn, provides that:

> In the event of the termination of this Agreement for any reason other than sale to Block, Franchisee shall sell, assign and deliver to Block all of the properties and assets of Franchisee's business operated hereunder (including, without limitation, all equipment and supplies of such business), and Block shall pay a fair and equitable price to Franchisee for Franchisee's business operated hereunder, but no less than [the sum of four specified components].

(*Id*. at 12-13, ¶ 24).

In conjunction with its termination of the franchise agreements, Block tendered the plaintiff a check totaling in excess of $1.8 million, which it estimated as the minimum payment required by paragraph 24, without prejudice to the plaintiff's ability to claim an additional amount as part of a fair and equitable price.  (Civil Action No. 03-0635-WS-C, Doc. 1, Exhibit J).  After the plaintiff returned the check and refused to turn over the documents identified in paragraph 15, Block filed suit alleging, inter alia, that the plaintiff had breached its post-termination contractual obligations by competing with Block and by not surrendering the documents listed in paragraph 15.  (*Id*. at 8-9).

Along with its complaint, Block filed a motion to preliminarily enjoin the plaintiff "from infringing

---

[2]Block prefers the term, "non-renewal," but the franchise agreements appear to describe any conclusion of the agreements other than by sale to Block as a "termination."  (Doc. 236, Exhibit 1 at 12, ¶ 24).  The Court's use of the latter term is not normative but merely tracks the language of the agreements.

[Block's] federally registered service marks, from unfairly competing with [Block], and from breaching [its] post-termination contractual obligations." (Civil Action No. 03-0635-WS-C, Doc. 4 at 1). After a hearing, Judge Butler granted the motion in part in November 2003. (*Id*., Doc. 34). In particular, he ordered the plaintiff to cease using or otherwise infringing on Block's marks or otherwise unfairly competing with Block, and to surrender to Block all documents identified in paragraph 15. (*Id*. at 19). Judge Butler declined to enjoin the plaintiff from competing with Block pursuant to paragraph 7 due to Block's failure to show the reasonableness of the covenant as written or the Court's authority under Missouri law to modify unreasonable terms. (*Id.* at 13-14).

In September 2004, after Block's action was consolidated with the plaintiff's previously filed action, (Doc. 95), Block moved for partial summary judgment, including with respect to the plaintiff's claim under Count Nine for payment of a "fair and equitable price." (Doc. 175). Block argued that, by failing to deliver documents and continuing to compete, the plaintiff anticipatorily breached the contract and forfeited any right to payment under paragraph 24. (Doc. 177 at 47-52). Block also noted that the plaintiff's conduct, especially its competition with Block during the 2004 tax season, "destroyed the value of the purchase contemplated by Paragraph 24 of the agreements." (*Id*. at 52).

In December 2004, Judge Butler issued an order denying summary judgment as to Count Nine. His order includes the following commentary on Block's argument that the plaintiff's competition had eliminated any value to Block of the purchase envisioned by paragraph 24:

> Defendant's argument that the terminated franchise has no further value - in significant part because defendant convinced this court to grant it access to plaintiffs' customer records on preliminary injunction by, inter alia, representing that such information was necessary to calculate the fair and equitable purchase price and further expressly representing that it stood ready to pay the minimum amount due under paragraph 24 of the franchise agreement as well as such further amount as might be found to be 'fair and equitable' - is untenable.  ...[T]his argument runs counter to [Block's] representations to the court ....

(Doc. 230 at 2-3).

The plaintiff's third and final amended complaint includes as Count Thirteen a claim for breach of the implied covenant of good faith and fair dealing, based on Block's alleged failure to  make the

minimum payment required by paragraph 24.  (Doc. 162 at 33-34).  The claim includes the following allegations:

> d.  Block has previously recognized and represented to this Court that it has a duty to pay the minimum 80% agreement amount concurrently with ABS turning over customer records;
> e.  Block previously represented to the Court that it stood ready to pay the $1.85 million minimum amount, yet it has failed and refused to do so, despite ABS's turnover of its customer records ....

(*Id*. at 34, ¶ 125; *accord id.* at 9-10, ¶ 34).  Elsewhere, the third amended complaint alleges that Block falsely represented to Judge Butler "that it needed the customer list in order to calculate ABS's fair and equitable value" and that Judge Butler ordered ABS to surrender these documents "based on Block's untrue representations."  (*Id*., ¶ 36).  The plaintiff's statement of disputed facts as recited in the joint proposed pretrial order continues the theme of misrepresentation to the Court, alleging that "Block acted in bad faith ... by obtaining ABS's customer files under false pretenses."  (Doc. 241 at 4, ¶ 8).

Block moves the Court for an order: (1) striking this statement from the pretrial order; (2) precluding the plaintiff from presenting evidence or argument that Block engaged in such activity; and (3) amending Judge Butler's December 2004 order to remove the quoted statements suggesting that Block represented: (a) that it needed the customer files in order to value the plaintiff's business; and (b) that it stood ready to make the minimum payment under paragraph 24 in exchange for the customer files only.  (Doc. 249 at 3, 13).

## DISCUSSION

The plaintiff argues that Block's motion is a disguised motion for partial summary judgment and thus untimely.  (Doc. 255 at 1-2).  The last day for filing motions in limine, however, was April 21, 2005, (Doc. 247), and the instant motion was filed prior to that deadline.  Because the motion seeks to exclude certain evidence allegedly supporting the plaintiff's claim for breach of the covenant of good faith and fair dealing rather than to eliminate the claim itself, it is properly viewed as a motion in limine

rather than a motion for partial summary judgment.[3] The motion was thus timely brought.

The question presented is whether any evidence exists that Block in fact represented to Judge Butler either that it required the customer lists in order to value the plaintiff's business or that it would make the minimum payment under paragraph 24 upon receipt of the customer lists, even if the plaintiff continued to compete with Block. The Court addresses these items separately.

### A. Need for the Customer Lists to Value the Business.

The Court has reviewed Block's filings and can find no shred of evidence that Block ever represented to Judge Butler that it needed the plaintiff's customer lists in order to value the business. On the contrary, Block stressed that it needed the customer lists in order to provide licensed Block tax preparation services in the plaintiff's former service area and to avoid the loss of corporate goodwill:

- "Armstrong's and ABS's failure to turn over their customer lists and related materials has also caused and will continue to cause irreparable harm and damage to [Block] because [Block] is being prevented from recouping [its] taxpayer-customers in Armstrong's and ABS's former franchise territories." (Civil Action No. 03-0635-WS-C, Doc. 3 at 7, Treat Affidavit ¶ 28).

- "[I]f the Defendants do not turn over their files, including prior year tax returns, [Block] will be unable effectively to market to or serve those taxpayer-customers who wish to

---

[3]"A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)(internal quotes omitted).

The plaintiff appears to believe that the alleged misrepresentations to Judge Butler are independently actionable. (Doc. 255 at 8-9). They are not. As set forth in a previous order, the plaintiff's claim for breach of the implied covenant of good faith and fair dealing is limited to whether Block breached the covenant by failing to make the minimum payment due under paragraph 24. (Doc. 298). The alleged representations are potentially admissible only if, and to the extent that, they are relevant to that single, limited claim. The Court has not been asked to pass on the relevance of the alleged misrepresentations to that claim.

    use legitimate [Block] offices in the upcoming tax season.  (*Id*., Doc. 5 at 7).

•   "[C]ustomer lists and files are the type of intangible asset that constitute the 'goodwill' of a business, especially when the business being purchased involves financial matters of customers."  (*Id*., Doc. 29 at 9).[4]

  Even more directly, at the hearing Block's witness Ken Treat effectively denied that Block needed the customer lists in order to determine a fair and equitable price.  (Doc. 249, Exhibit 1 at 114-15).

  The plaintiff identifies no evidence to the contrary, and its flimsy arguments may be easily disposed of.  First, the plaintiff insinuates that Block made the alleged representation in chambers, off the record.  (Doc. 255 at 2, 4).  It is of course inherently implausible that such a critical point would not be mentioned in the course of a two-day hearing or in the massive briefing that preceded and followed the hearing.  Indeed, the plaintiff does not allege that Block in fact made the purported representation in chambers but simply mentions that conference as one place in which Block made arguments — which the plaintiff admits extended far beyond the alleged representation — to the Court.  At any rate, even if the plaintiff had asserted that the alleged representation was made in chambers, its ipse dixit in brief is not evidence.

  Second, the plaintiff argues that Treat failed to draw a distinction between customer files and financial records when discussing (on cross-examination) Block's impaired ability to calculate a precise minimum payment or fair and equitable price.  (Doc. 255 at 3-4).  The quoted excerpts from the hearing[5] patently do not support the proposition that Treat or Block asserted or implied that the customer files constituted financial records of the plaintiff's business needed for a valuation of the

---

[4] Judge Butler was well aware of Block's asserted linkage between the customer lists and goodwill/irreparable harm, as he found that Block "has demonstrated that it is likely to lose both [customers and goodwill] if defendants refuse to turn over customer names, customer lists [and other materials identified in paragraph 15]" and used this finding to establish irreparable injury.  (*Id*., Doc. 34 at 15-16).

[5] The plaintiff, while purporting to quote from the hearing, has not furnished the Court with the corresponding portion of the transcript.  For present purposes, the Court assumes the plaintiff has correctly quoted the transcript.

business.  On the contrary, and as noted previously, Treat clearly rejected the suggestion of plaintiff's counsel that customer lists were needed to calculate a fair and equitable price.

Bereft of any evidence that Block actually made the alleged representation, the plaintiff is reduced to arguing that the representation must have been made because Judge Butler thought it had been and because Block did not seek to disabuse him of this notion.  (Doc. 255 at 2, 3, 5-6, 8).  Judge Butler's understanding of Block's argument, however, is not a substitute for evidence of what Block actually argued and, as discussed above, there is no evidence that Block actually argued that it needed the customer files to value the business.[6]  The plaintiff cites no authority for the proposition that Block was required to correct Judge Butler's misapprehension as to its argument and, in any event, Block acted promptly after Judge Butler clearly articulated his understanding in December 2004.[7]

---

[6]The origins of Judge Butler's understanding are not difficult to see, and they lie with the plaintiff rather than with Block.  While Block focused on its need for the customer lists to preserve goodwill, the plaintiff focused on the language of paragraph 15 as support for the proposition that it could retain the lists until paid a fair and equitable price.  When at the hearing plaintiff's counsel challenged Block's proposed payment as less than fair and equitable, Treat justifiably responded that Block could be no more precise without access to the plaintiff's "financial data."  (Doc. 249, Exhibit 1 at 105).  This of course meant the plaintiff's books and records of account (which contain financial information), not the customer lists (which contain only information about the plaintiff's client base), a point made clear both in Treat's testimony, (Doc. 249, Exhibit 1 at 114-15), and in post-hearing briefing.  (Doc. 53 at 5 n.1).  Nevertheless, the plaintiff's post-hearing briefing dangled before the Court the red herring that the customer lists constituted financial information that Block insisted it needed in order to value the business.  (Doc. 51 at 2-3, 6).

[7]Judge Butler's order on preliminary injunction did not expose any misunderstanding of Block's argument.  On the contrary, the order distinguished between the plaintiff's "assets," including "customer files" — which the order recognized as necessary to avoid loss of goodwill — and "financial records" and "financial data," which the order noted had not been provided by the plaintiff, depriving the plaintiff of the ability to withhold the customer lists and other assets under paragraph 15 on the grounds that Block's estimated price was not fair and equitable.  (Doc. 34 at 10-11, 15-16).

Judge Butler's order on motion for clarification in February 2004 stated that "[t]he court's primary focus in granting the preliminary injunction requiring Armstrong to turn over client records was to provide Block with a basis for valuation of the business," (Doc. 57 at 2), but it did not state that Block had represented that the customer lists were necessary for that purpose.

At the conclusion of his order on motion for summary judgment, Judge Butler sent the parties to mediation, (Doc. 230 at 10), and the case did not move forward until mediation stalled in mid-February

### B. Readiness to Pay $1.85 Million Upon Receipt of Customer Lists.

Neither party cites to the transcript of the hearing or refers to off-the-record discussions with regard to this alleged representation. Thus, any such representation must be contained in Block's filings in connection with its efforts to obtain injunctive relief.

In a pre-hearing brief, Block noted that it had tendered its estimated minimum payment under paragraph 24, that the plaintiff had "refused that payment," and that Block "stands ready to make that payment in exchange for ABS's fulfillment of its contractual obligations to cease its operations, turn over its customer lists, *and comply with the covenant not to compete* incident to the sale of its business." (Civil Action No. 03-0635-WS-C, Doc. 22 at 12-13 (emphasis added)). This statement is incompatible with a representation that Block would pay the plaintiff over $1.8 million simply in exchange for its customer lists. The only remaining question is whether Block elsewhere abandoned or contradicted this unequivocal statement. The Court finds no evidence that it did so.

Block's same pre-hearing brief stated that "ABS will be receiving close to $2 million dollars *as compensation for its covenant not to compete*," (Civil Action No. 03-0635-WS-C, Doc. 22 at 13 (emphasis added)), again plainly linking payment to enforcement of the covenant. A few pages later, Block reiterated that the plaintiff "will be receiving a payment of almost $2 million dollars simultaneously with the entry of and compliance with the requested injunction." (*Id*. at 16). Block had previously identified the "requested injunction" as one "preliminarily enjoining ABS from its service mark infringement, unfair competition and non-compliance with its post-termination obligations," (*id*., Doc. 8 at 15), and Block identified the plaintiff's "post-termination obligations" as "including turning over customer files to [Block] *and complying with its limited covenant not to compete*." (*Id*., Doc. 22 at 1 (emphasis added)).

The plaintiff ignores these passages. Instead, it cites Block's argument that it was entitled to the customer lists upon payment under paragraph 24 and that the Missouri court had ordered the franchisees in that case to turn over their customer files — and Block to make an estimated payment under paragraph 24 — at the outset of the litigation. (Civil Action No. 03-0635-WS-C, Doc. 22 at

---

2005. (Doc. 234). The instant motion was filed within seven weeks afterwards.

11-12).  This argument says nothing more than that *one* of the things Block was entitled to in exchange for payment was the customer files; it does not suggest that Block was obligated, or willing, to pay over $1.8 million for the customer files alone.

The plaintiff's only other citation is to a paragraph from a post-hearing brief that reads in full as follows:

> Second, ABS should be ordered to turn over all of its customer files for its expired businesses to [Block].  Paragraph 15 of ABS's franchise agreements provide that upon termination of the franchise agreements and payment of the amount due under Paragraph 24, ABS must turn over its 'customer lists, customer names, forms, files and copies of tax returns." Pl. Ex. 1 ¶ 15. [Block] tendered that payment, but ABS refused to accept it and admitted to the Court that it is attempting to hold that material 'hostage.' [Block] stands ready to make that payment, and the Court should order ABS to turn over its customer lists, files and other indicia of goodwill as the agreements require.

(Civil Action No. 03-0635-WS-C, Doc. 29 at 8).  The "stands ready" language might at first blush appear to support the plaintiff's position, but it actually says no more than the plaintiff's other passage — i.e., that the customer list was *one* of the things Block should receive in exchange for its payment. Moreover, the statement is taken out of the context of the entire brief of which it is a part.  Elsewhere in the same filing, Block wrote that "a generous payment is provided for, *but only as part of a process which includes* a transfer of customer lists and records and *an agreement by the Defendants to refrain from competition* with the 'business' which [Block] is purchasing and will operate in the area," (*id*. at 3 (emphasis added)), language clearly linking payment to the non-compete aspect of the requested injunction.  Later, Block argued that the plaintiff had recouped its investment through years of profits and would "receive a substantial additional payment *when it turns over its business* to [Block], pursuant to Paragraph 24 of the franchise agreements."  (*Id*. at 6 (emphasis added)).  As noted on page three and again on page eight, "[t]here is no dispute that *the covenant* [not to compete] *is part of the transfer of ABS's business* to Block," (*id*. at 9 (emphasis added)), again tying payment to the non-competition agreement.

Moreover, Block's post-order filings continued to plainly link payment to the covenant not to

-9-

compete, including the following excerpts:

- "[T]he *consideration for Armstrong's agreement not to compete* following expiration of his franchise agreements was not only his license to operate a business under the [Block] marks and system ... but also *the guaranteed payment set out in Paragraph 24* ...." (Civil Action No. 03-0635-WS-C, Doc. 39 at 3 (emphasis added)).

- "*In exchange for that payment* [under paragraph 24], the contract contemplated both a smooth transition to Block's operation in the formerly franchised territory *and the observance by Armstrong of his agreement not to compete* in the area for a certain time. (Id. (emphasis added)).

- "If, contrary to his agreement, Armstrong continues to compete following expiration of his agreements, *what Block is purchasing for that payment* will be emasculated ...." (*Id*. at 3-4 (emphasis added)).

- "If Armstrong continues to compete in the tax preparation business, soliciting the same customers in the very territory in which he has represented and been sponsored by Block for the last 14 years, *the purpose of the payment provided for in Paragraph 24* will be largely vitiated." (*Id*. at 12 (emphasis added)).

- "The payment contemplated by Paragraph 24 of the former franchise agreements was intended to be made in return for, inter alia, the assets of the franchise business, the customer files, and *compliance with the covenant not to compete*." (*Id*., Doc. 53 at 11 (emphasis added)).

In short, when Judge Butler wrote in his November 2003 order that "[Block] stands ready to tender payment of more than $1.85 million," (Civil Action No. 03-0635-WS-C, Doc. 34 at 17), he did not do so based on any representation from Block that it stood ready to tender such payment in exchange for the customer lists alone.

### C.  Relief Requested.

Block requests that the plaintiff be precluded from presenting argument or evidence: (1) that it misrepresented to the Court that it needed the customer lists in order to calculate a fair and equitable price; and (2) that it misrepresented to the Court that it stood ready to pay the plaintiff approximately $1.85 million in exchange for the plaintiff's customer records only. That relief can and should be granted.

Block also requests the Court to strike offending language in the joint proposed pretrial order. That relief could be granted, but the Court sees no reason to alter that document, as it will not be shown to the jury and as the Court's order will preclude mention of the allegation to the jury.

Finally, Block requests the Court to amend Judge Butler's order on motion for summary judgment to remove the quoted statements suggesting misrepresentations by Block. This relief cannot be granted because it would require one judge to remove an observation made by another. Nor is such relief necessary, since the jury will not see or be told of that order, and any misconception the public might obtain from reading Judge Butler's order will be allayed by reading this one.

## CONCLUSION

For the reasons set forth above, Block's motion to strike is **granted** to the extent that the plaintiff and its counsel are **ordered** not to state or suggest in any fashion that Block misrepresented to the Court that it needed the plaintiff's customer lists in order to calculate a fair and equitable price or that Block misrepresented to the Court that it stood ready to make its estimated payment under paragraph 24 in exchange for the plaintiff's customer lists only. In all other respects, the motion to strike is **denied**.

DONE and ORDERED this 17th day of November, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE