**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NORRIS ARMSTRONG, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 03-0148-WS-C** |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **HRB ROYALTY, INC., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 03-0635-WS-C** |
| | ) | |
| **NORRIS ARMSTRONG, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on a motion in limine filed by the Block defendants ("Block") to exclude certain arguments by Armstrong Business Systems, Inc. ("ABS") in support of its claim for breach of a non-compete provision. (Doc. 264). Also presented are ABS's motion to strike Block's motion, (Doc. 268), and ABS's motion to strike an affidavit submitted by Block. (Doc. 275). The parties have submitted briefs in support of their respective positions, (Docs. 264, 269, 274, 275, 284, 285, 286), and the motions are ripe for resolution. After carefully considering the foregoing materials, the Court concludes that Block's motion is due to be granted and that ABS's motions are due to be denied.

**BACKGROUND**

The franchise agreements include the following provision prohibiting Block from competing with

ABS:

> Block covenants not to compete with Franchisee, directly or indirectly, in the preparation of tax returns or performance of related services within the franchise territory.

(Doc. 236, Exhibit 1 at 2, ¶ 2).

Should Block violate the covenant, the franchise agreements specify ABS's "sole remedy" as follows:

> If in any 12-month period ended April 30, (a "payment year"), ... related services are performed by Block within the franchise territory, Franchisee's sole remedy shall be the right to receive from Block an amount equal to 55% of the gross receipts from the performance of such related services by Block in the franchise territory for such payment year.

(*Id*.).

Should the parties be unable to determine the quantity of related services performed in ABS's territory, as when "Block has no records to identify the exact point of each sale," the franchise agreements provide a formula for Block's required payment:

> The parties recognize that in some instances they may be unable to determine the extent to which related services are performed by Block in the franchise territory. ...  In such circumstances, where the amount to be paid to all "major franchisees" cannot be determined, the amount to be paid to Franchisee shall be computed by dividing the "gross volume of all major franchisees" for the payment year by the "H & R Block gross volume" for the same period. Fifty-five percent of the quotient thus obtained shall be multiplied by total royalties and receipts received by Block in the payment year for its performance of the related service for which Franchisees' share cannot be determined. Distribution to Franchisee of the result obtained shall be in the ratio that "Franchisee's gross volume" for the payment year bears to the gross volume of all major franchisees for such year.

(*Id*.).

During the life of the franchise agreements, Block sold tax preparation software and provided internet-based tax preparation services within ABS's franchise territory.  (Doc. 264 at 1, 2 n.2).  In Count Seven of the third amended complaint, ABS alleges that this activity breached Block's covenant not to compete.  (Doc. 162 at 25-26).  While Block does not concede liability, the instant motion

challenges the magnitude of ABS's claimed damages.

ABS utilized one of its expert witnesses, Manuel Sport, to calculate its damages from Block's alleged violation of its covenant not to compete.  Sport opined as follows:

> Block's production of data with respect to these claims has been limited. Based on the data produced so far, ABS's damages relating to Block's sales of TaxCut and online tax programs with [sic] ABS's territories totals at least $161,283.

(Doc. 264, Exhibit 2, ¶ 44).

In discovery responses, ABS similarly quantified its damages as follows:

> Block has produced only limited data with respect to these related services. ... Based on the limited data produced by Block to date, ABS's damages relating to Block's sales of TaxCut and online tax programs within ABS's territory totals at least $161,283.  Additional discovery is needed on the true figure.

In the joint proposed pretrial order, however, ABS claims a much larger figure:

> Block deliberately failed to retain any records regarding its sale of TaxCut and online tax services within ABS's protected territory.  Accordingly, it is impossible to precisely calculate the amount due ABS under the formula set out in the Franchise Agreement.  Based on the evidence and testimony adduced, the amount due ABS ranges between $200,000 and $1,000,000.

(Doc. 241 at 29).

Block requests the Court to preclude ABS from asserting that Block "failed to obtain or retain [or produce] any required data related to sales of TAXCUT software [and] from asserting any claim for damages under Paragraph 2 ... other than the $161,283 identified in Sport's May 28, 2004 report." (Doc. 264 at 3-4, 11).

## DISCUSSION

### A.  Motion to Strike.

ABS throws up a welter of procedural defenses to Block's motion in limine.  ABS first argues that Block's objection to ABS's claimed damages has been waived by failure to articulate it in the joint proposed pretrial order.  (Doc. 286 at 1-2). Judge Butler's order concerning pretrial conferences, however, required the parties to agree to the amount of damages if possible and, if not, for the plaintiff

to identify the categories of damage and the amount being claimed for each.  (Doc. 151, Attachment at 3, ¶ 4.I).   The parties did not submit an agreed itemization of damages; instead, ABS listed four categories of damages, including its claim of $200,000 to $1,000,000 for breach of the covenant not to compete.  (Doc. 241 at 29-30).   Under the terms of Judge Butler's order, ABS's unilateral listing of damages necessarily reflected that Block challenges the amount of damages claimed, thus preserving the issue.  None of ABS's cases even remotely suggests the contrary.

In a related vein, ABS argues that Block's motion is barred because it was not listed as a contemplated motion in the joint proposed pretrial order.  (Doc. 268 at 1-2).[1]  Accepting for present purposes ABS's premise that failure to list a contemplated motion that addresses a preserved issue generally precludes the party from later filing such a motion,[2] the instant motion was not subject to any such limitation for at least two reasons.

First, and as set forth in a previous order, "[a] motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."  *O'Rear v. Fruehauf Corp*., 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)(internal quotes omitted).  Such a motion is in effect an evidentiary objection made in advance of trial, and it should be obvious that a party's failure to articulate its objection to particular evidence by listing it as the subject of a potential motion in limine does not preclude the party from raising the objection at trial.  The objection must thus be considered, and ABS offers no reason why this

---

[1]Judge Butler's order concerning pretrial conferences specifies that "[t]he proposed Pretrial Order shall contain ... [a] list of any legal issues or motions pending or contemplated."  (Doc. 151, Attachment at 3, ¶ 4.F).

[2]Judge Butler's order concerning pretrial conferences does not express such a draconian result, as it and Rule 16(e) restrict post-pretrial expansion of "issues," not of motions directed to those issues. (Doc. 151, Attachment at 4, ¶ 5).  ABS's proposed rule would, for example, preclude it from moving for judgment as a matter of law as to Block's counterclaims, since it did not list the motion in the proposed pretrial order even though it surely contemplated filing such a motion.  (Doc. 241 at 20-21).

-4-

consideration should be delayed until an already hectic trial.

Second, Block has stated that it informed Judge Cassady of its desire to pursue additional motions not listed in the proposed pretrial order and that Judge Cassady granted permission to do so. (Doc. 284 at 2).  That Judge Cassady, following the pretrial conference, entered an order allowing "[a]ny new motions in limine [to] be filed no later than April 21, 2005," (Doc. 247), supports Block's version of events, and ABS's failure to challenge Block's assertion is dispositive.

In its final procedural gambit, ABS argues that Block is precluded from challenging its evidence of damages because it filed no motion for summary judgment on this point.  (Doc. 268 at 2).  As in a recent Sixth Circuit case, ABS "do[es] not cite any authority for the proposition that failure to move for summary judgment or a default judgment amounts to a waiver [of a claim or defense].  There appears to be no authority for that position."  *Street v. Corrections Corp*., 102 F.3d 810, 816 (6th Cir. 1996).

In short, ABS's motion to strike is due to be denied.


**B.  Motion in Limine.**

ABS concedes that the franchise agreements cap its damages at 55% of Block's gross receipts from the provision of related services within its territory.  (Doc. 269 at 1).  ABS also acknowledges that paragraph 2 includes a detailed formula for calculating this percentage from universal data when information particular to the franchisee's territory is lacking.  (*Id*. at 5-6).  However, ABS argues that it is freed from this restrictive formula on three alternative grounds: (1) because Block "intentionally failed to keep records regarding their admitted sales of TaxCut in ABS's protected territory," (*id*. at 2); (2) because "the Agreement clearly contemplates that Block [rather than ABS] is obligated to make that calculation," yet Block failed to do so, (*id*. at 5); and (3) because "ABS is unable to make the calculation because the necessary information was withheld by Block."  (*Id*. at 6).  The Court addresses these arguments in turn.

ABS offers nothing but its ipse dixit for the proposition that Block deliberately failed to keep records concerning its sales of tax preparation software.  Block's verified interrogatory responses, in contrast, constitute record evidence that "Block is not able to determine the gross receipts by county

and/or state from retail sales of TAXCUT at retail locations for the dates requested because that information was never in Block's possession, custody or control."  (Doc. 264, Exhibit 3 at 2). Moreover, Block's brief — which remains unchallenged by ABS —  represents that the reason Block never had the requested information was because the national retailers to whom Block sold the program did not provide Block with information as to where their copies were sold.  (Doc. 264 at 2-3, 5).[3]  In short, the only record evidence does not support, but affirmatively negates, any contention that Block improperly failed to keep records concerning its sales of the tax preparation program.

Moreover, under the franchise agreements such a failure, had it been shown, would not furnish grounds to ignore the explicit formula the agreements provide.  First, paragraph 2 expressly contemplates that the alternative formula applies whenever Block "has no records to identify the exact point of each sale," with no restriction as to acceptable reasons for the absence of such records.  More pointedly, the agreements make the provided formula ABS's "sole remedy" for breach of the covenant not to compete, which can mean no other than that the formula applies in all cases, bar none.

Because evidence that Block improperly failed to keep records concerning its sales of the TAXCUT computer program is both non-existent and irrelevant, Block's request that ABS be precluded from injecting any such issue at trial is due to be granted.

ABS's argument that the franchise agreements task Block with developing the alternative calculation is based on the premise that "Block is the only party to the Agreement that has the information necessary to make the calculation."  (Doc. 269 at 5).  The agreements, however, employ passive language that patently does not require Block to make the calculation for ABS and does not preclude ABS from obtaining from Block the data from which the alternative calculation can be made. ABS's remedy — particularly in the context of litigation — was to request the necessary information from Block in discovery and prepare its own calculations using the alternative formula.

In this vein, ABS suggests that it did request the necessary information but that Block withheld

---

[3]This is also the import of Block's discovery responses.  (Doc. 269, Exhibit B at 5).

it.  To the extent this is true,[4] ABS's remedy was to pursue a motion to compel the production of the withheld information, not to unilaterally declare itself entitled to more than sextuple its contractual damages.  ABS cannot use its own litigation errors to escape the parties' agreed formula for damages.[5]

Because ABS cannot avoid the contractual formula, it is unnecessary to consider the parties' arguments concerning the deposition testimony of Joseph Danielle, on whose opinion ABS stakes its claim to damages of up to $1,000,000.  For the same reason, ABS's motion to strike Danielle's affidavit — which motion is suspect on any number of grounds — is due to be denied as moot.

The final issue is whether ABS's claim for damages under Count Seven is limited to the $161,283 figure provided by Sport and ABS in discovery.  Both purported to leave wiggle room to demand a larger figure once Block provided additional discovery.  Because discovery has long since expired, the only asserted basis for allowing ABS to now increase its demand collapses.  It may well be, as Block asserts, that Block in discovery provided ABS with information from which Sport could have calculated a larger figure consistent with the contractual formula.  The time for doing so, however, has expired, and in any event ABS did not purport to reserve a right to increase its demand using information already in its possession should the Court reject its bid to obtain extra-contractual damages.

## CONCLUSION

For the reasons set forth above, Block's motion in limine is **granted**.  ABS and its counsel are **ordered** not to state or suggest in any fashion that Block improperly failed to maintain or produce any data needed to calculate contractual damages under paragraph 2 of the franchise agreements.  ABS and its counsel are also **ordered** not to state or suggest that ABS's damages under Count Seven

---

[4]ABS does not identify any discovery requests directed towards the damages formula.  Block states that it provided all requested information but that ABS failed to request all that it should have. (Doc. 274 at 4-6).

[5]The same observation disposes of ABS's complaint that Block refused to answer ABS's interrogatory asking Block to calculate contractual damages.  (Doc. 269 at 5).  Assuming without deciding that Block was required to answer such a question, ABS's remedy was to pursue a motion to compel, which it failed to do.

exceed $161,283.

For the reasons set forth above, ABS's motion to strike Block's motion in limine is **denied**, and its motion to strike the affidavit of Joseph Danielle is **denied as moot**.

DONE and ORDERED this 30th day of November, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE