IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NORRIS ARMSTRONG, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 03-0148-WS-C |
| ) | |
| **HRB ROYALTY, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |
| ) | |
| **HRB ROYALTY, INC., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 03-0635-WS-C |
| ) | |
| **NORRIS ARMSTRONG, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on a motion in limine filed by the Block defendants ("Block") to preclude any claim or argument that Block lacked the right to compete with Armstrong Business Services, Inc. ("ABS") in the Mobile area after the expiration of the franchise agreements.  (Doc. 258).  The parties have submitted briefs in support of their respective positions, (Docs. 259, 271, 277), and the motion is ripe for resolution.  After carefully considering the foregoing materials, the Court concludes that the motion is due to be granted in part and denied in part.

**BACKGROUND**

The franchise agreements include the following provisions, among many others:

> Block covenants not to compete with Franchisee, directly or indirectly, in the preparation of tax returns or performance of related services within the franchise territory.

(Doc. 236, Exhibit 1 at 2, ¶ 2).

> Franchisee covenants that ... for a period of three years after the termination, or the transfer or other disposition of this franchise, he will not so compete as aforesaid within 100 miles of the franchise territory.

(*Id*. at 4, ¶ 7).

After Block ended the franchise agreements in September 2003, it began offering tax preparation services in the Mobile area. Among the counterclaims filed by Block is one for breach of contract based on ABS's alleged violation of the non-competition provision of paragraph 7. (Civil Action No. 03-0635-WS-C, Doc. 1 at 8-9; Doc. 292, Exhibit 2 at 13).[1]

The following sentence in the joint proposed pretrial order prompted the instant motion:

> Regarding Block's counterclaims, Block has no right to assert a damage claim against ABS, because Block did not have the right to set up offices in competition with ABS. Any "damages" incurred by Block were caused by Block's own wrongful conduct. And, Block should be estopped from asserting any damages against ABS.

(Doc. 241 at 5, ¶ 10). Block argues that this contention was never pleaded and that it is in any event legally meritless, whether asserted as a defense to Block's counterclaims or as a basis for affirmative relief. Block seeks an order precluding ABS from presenting evidence or argument that Block was "not entitled to operate tax return preparation offices in ABS's formerly franchised territory during the 2004 tax season." (Doc. 277 at 10).

## DISCUSSION

The threshold issue raised by Block is whether ABS's assertion that Block lacked the right to compete even after the franchise agreements terminated was adequately presented in the pleadings governing the scope of this lawsuit. If it was not, it is not a part of the lawsuit, obviating consideration of the legal merits of the assertion.

---

[1] Additional counterclaims were for breach of other provisions of the franchise agreements and for service mark infringement. (Civil Action No. 03-0635, Doc. 1 at 8-11; Doc. 292, Exhibit 2 at 13-15, 19-20, 27-28).

**A. Pleading.**

ABS's third and final amended complaint includes a number of claims. ABS identifies only one of them as incorporating its allegation that Block lacked the right to compete, (Doc. 271 at 1-2), and the Court concurs with this assessment.[2] Count Six alleges an estoppel based on misrepresentations that the franchise agreements were perpetual, would be automatically renewed except upon mutual agreement to the contrary, and would not be terminated by Block absent breach. (Doc. 162 at 24-25). The claim demands as relief that Block be "estopped from asserting any rights or taking any actions which are inconsistent with Block's representations and promises" as aforesaid. (*Id*. at 25, ¶ 89).

Block complains that Count Six "has never included an allegation that Block was estopped from competing after the agreements expired." (Doc. 277 at 4). The question, however, is not whether such an allegation was expressly made in the third amended complaint but whether the claim as pleaded encompassed, and put Block on notice of, such an allegation. *E.g., Hamilton v. Allen-*

---

[2]Count Ten alleges that Block intentionally interfered with ABS's business relationships by: "us[ing] ABS's customer list ... to contact ABS's customers and schedule appointments to prepare and file their 2003 tax returns" without any right to use the lists; making "misleading, false, defamatory and slanderous statements about ABS to ABS customers and potential customers"; and "engag[ing] in numerous endeavors to interrupt ABS's business operations and to embarrass, threaten or harass ABS employees, customers and potential customers," which efforts are listed but which do not include the mere fact of engaging in competition with ABS. (Doc. 162 at 28-30). Counts Eleven and Twelve allege slander but by their terms are limited to defamatory statements made by Block about ABS and its employees. (*Id*. at 31-33). Count Thirteen alleges a breach of the implied covenant of good faith and fair dealing, (*id*. at 33-34), but the Court has previously held that this claim is limited to the charge that Block breached the covenant by failing to pay the minimum price required by paragraph 24. (Doc. 298). While ABS argues that Block's allegedly wrongful entry into competition is relevant to these claims, (Doc. 271 at 6-8), it wisely does not argue that the claims as pleaded preserved any assertion that Block's entry into competition was wrongful.

*Bradley Co.*, 244 F.3d 819, 823 (11th Cir. 2001). As discussed in a previous order, by alleging that Block is estopped "from asserting *any* rights or taking *any* actions which are inconsistent with" Block's representations concerning the duration of the franchise agreements, ABS satisfied Rule 8 and put the burden on Block to determine in discovery the precise parameters of ABS's requested relief. (Doc. 299 at 5 n.4).[3]

Block apparently did not engage in such discovery. However, the joint proposed pretrial order narrows the scope of ABS's estoppel claim by limiting the matters as to which Block is allegedly estopped to the following:

- "from terminating the Agreements without paying ABS its fair and equitable price based upon the parties' long term expectations when they entered the Agreement";
- "from recovering any damages on its counterclaims"; and
- "from terminating ABS in the manner that it employed."

(Doc. 241 at 18, ¶¶ 5, 6, 10).

The first and last of these items do not implicate ABS's assertion that Block was estopped to compete after the franchise agreements were terminated, because they address only the termination mechanism itself. The remaining item, however, does implicate that assertion, because an estoppel to recover damages on Block's counterclaims encompasses an estoppel to engage in competition to begin with[4]. However, this estoppel is asserted only defensively. Accordingly, while ABS can argue that Block was estopped to compete as a defense to Block's counterclaims, it cannot argue that Block was estopped to compete as a basis for affirmative relief.

---

[3]The same order disposes of Block's argument, raised in summary fashion herein, that ABS's estoppel claim is "nothing more than an improper attempt to litigate fraud claims that the Court has already dismissed." (Doc. 277 at 5).

[4]This is definitely so with respect to Block's counterclaim for breach of the non-competition provision of the franchise agreements. ABS assumes that Block's ability to recover damages on its other counterclaims also depends on whether Block was entitled to compete with ABS. (Doc. 241 at 5, ¶ 10). For present purposes, the Court assumes this is correct.

### B. Block's Right to Compete.

To fall within the bounds of ABS's defensive estoppel claim as pleaded, ABS must show that for Block to engage in competition after terminating the franchise agreements would amount to "asserting [a] righ[t] or taking a[n] actio[n] which [is] inconsistent with Block's representations and promises that the [franchise agreements] are perpetual in nature and would not be terminated or non-renewed in the absence of ABS's breach of such [franchise agreements]." (Doc. 162 at 25, ¶ 89). The parties have addressed neither this requirement nor ABS's ability vel non to establish the elements of a defensive estoppel under their rather different views of what those elements are. (Doc. 292, Exhibit 2 at 12, 18-19, 26).

Instead, the parties spend much of their briefing debating whether the franchise agreements by their terms allow Block to compete without first paying a fair and equitable price under paragraph 24. The trouble is that ABS's defensive estoppel claim as ABS chose to plead it renders irrelevant the language of the franchise agreements concerning competition and any "conditions precedent" the agreements imposed on Block's right to compete. ABS's claim depends not on the agreements but on Block's representations as to their duration. Whether or not ABS could have pleaded a breach of contract or other claim based on the language of the agreements, it did not do so. Likewise, whether or not the franchise agreements allow Block to compete before paying a fair and equitable price (an irrelevant question under ABS's defensive estoppel claim), under ABS's theory Block could be estopped to compete as a result of its representations as to the duration of the agreements.

Block's only other attack on ABS's defensive estoppel claim is to suggest that it "is irreconcilable with the Court's preliminary injunction" because that order "contemplated ... that Block would and could open its own offices and operate during the 2004 tax season." (Doc. 259 at 5, 6). Block's motion prompting the order sought to require ABS to relinquish customer lists and other materials and to refrain from using Block marks and engaging in competition with Block. (Doc. 314 at 8). Neither side's briefing presented the issue whether Block should be estopped to compete with ABS due its representations regarding the duration of the franchise agreements, and the order at best

reflects an assumption that Block could properly compete, not a holding that it was entitled to do so.[5]

## CONCLUSION

For the reasons set forth above, Block's motion in limine is **granted** to the extent that ABS and its counsel are **ordered** not to state or suggest in any fashion that: (1) Block lacked the right under the franchise agreements to compete with ABS after the agreements terminated; or (2) that Block's post-termination competition supports any claim by ABS for affirmative relief.   In all other respects, the motion in limine is **denied**.

DONE and ORDERED this 30th day of November, 2005.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE

---

[5]At any rate, "the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117, 1133 (11th Cir. 2005), not to definitively resolve the merits at the outset of the litigation.  Thus, "the findings of fact and conclusions of law made by a court in granting a preliminary injunction are not binding at the trial on the merits ...." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).